In re Linda Faye **PENDLEBURY,** a/k/a Linda Faye Stevens, Debtor.

In re Pamela Elaine **ARNETT,** a/k/a Pamela Elaine Nidiffer and Pamela Elaine Buckles, Debtor.

In re Wayne Richard **WILLIAMS** and Wanda Williams, Debtors.

In re James Weston **LIVERMAN** and Donna Jean Robinson Liverman, Debtors.

Bankruptcy Nos. 3–88–01528, 3–88–01544, 3–88–01861 and 3–88–02044.

United States Bankruptcy Court, E.D. Tennessee.

Dec. 2, 1988.

Dugger & Cole, Mark S. Dugger, Elizabethton, Tenn., for debtors, Linda Faye Pendlebury and Pamela Elaine Arnett.

Hampton & Hampton, Bill Hampton, Elizabethton, Tenn., for joint debtors, James Weston Liverman and Donna Jean Robinson Liverman, and Wayne Richard Williams and Wanda Williams.

McKinnon, Fowler, Fox & Taylor, John S. Taylor, Johnson City, Tenn., for Leader Federal Sav. and Loan Ass'n.

## MEMORANDUM ON MOTION OF DEBTORS TO STRIKE PROVISION IN REAFFIRMATION AGREEMENTS

RICHARD S. STAIR, Jr., Bankruptcy Judge.

The debtors in these four Chapter 7 cases each filed a motion requesting an order striking a provision in a proposed reaffirmation agreement with Leader Federal Savings and Loan Association (Leader Federal). The reaffirmation agreements at issue purport to make the respective debtors, individually or jointly, as the case may be, responsible for the payment of attorney's fees in the amount of $250.00.[1] By the execution of reaffirmation agreements, the debtors desire to retain possession of mobile homes financed through Leader Federal. The debtors do not, however, acquiesce in Leader Federal's insistence that each reaffirmation agreement contain the provision requiring payment of a $250.00 attorney's fee.

The trustee in each case has abandoned the mobile home as a burdensome asset of the estate. The court has withheld granting the discharges of the respective debtors pending resolution of the issues raised by their motions.

These are core proceedings. 28 U.S.C.A. § 157(b)(2)(O) (West Supp.1988).

### I

■ The Bankruptcy Code sanctions two methods by which debtors may retain possession of secured property: redemption or reaffirmation.[2] Redemption, autho-

---

1. The reaffirmation agreements in dispute have not been filed and are, therefore, not a part of the record in these proceedings. Appended to the motions filed by the debtors, Linda Pendlebury and Pamela Arnett, are copies of unexecuted reaffirmation agreements each of which contains the following paragraph:

    3. Debtor further acknowledges and agrees to pay to Secured Creditor an attorneys [sic] fee of Two Hundred Fifty and No/100 ($250.00) Dollars, which amount is acknowledged to be reasonable.

This disputed paragraph presumably forms the basis of the present controversy in all four cases.

2. 11 U.S.C.A. § 524(f) (West Supp.1988) makes it clear that a debtor may voluntarily repay debts, secured and unsecured, even if a reaffirmation agreement is not obtained. However, voluntary post-petition payments do not reobligate a debtor on the original debt nor is a secured creditor, by accepting voluntary payments, deprived of its right to repossess the secured collateral upon termination of the auto-

rized under 11 U.S.C.A. § 722 (West 1979), permits the debtor to redeem tangible secured personal property from a lien securing a consumer debt upon a lump-sum payment to the creditor of the fair market value of the property or the amount of the claim, whichever is less. *See General Motors Acceptance Corporation v. Bell (In re Bell),* 700 F.2d 1053, 1055–56 (6th Cir.1983). Redemption may be voluntary where the debtor and secured creditor stipulate the redemption value of the secured property. Redemption can also be involuntary.[3] Reaffirmation contemplates a voluntary post-petition agreement between the debtor and creditor. It is authorized by 11 U.S.C.A. § 524(c) (West Supp.1988) which provides in material part:

(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable non-bankruptcy law, whether or not discharge of such debt is waived, only if—

(1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;

(2) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;

(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that such agreement—

(A) represents a fully informed and voluntary agreement by the debtor; and

(B) does not impose an undue hardship on the debtor or a dependent of the debtor;

(4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;

(5) the provisions of subsection (d) of this section have been complied with; and

(6)(A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as—

(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and

(ii) in the best interest of the debtor.

(B) Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property.

In discussing reaffirmation under § 524(c), the Court of Appeals for the Sixth Circuit has stated:

Section 524(c) authorizes a Chapter 7 debtor to seek *renegotiation* of the terms of the security agreement with the creditor thereby creating an alternative method pursuant to which a debtor may attempt to retain possession of secured collateral. Such an alternative, obviously attractive to the debtor financially unable to redeem the secured collateral through a lump-sum payment, is the equitable complement to § 722. Simply, a debtor incapable or unwilling to tender a lump-sum redemption and redeem the secured collateral for its fair market value may reaffirm with the creditor; contra-

---

matic stay. *See In re Whitaker,* 85 B.R. 788 (Bankr.E.D.Tenn.1988).

**3.** Fed.R.Bankr.P. 6008 provides:
   On motion by the debtor, trustee, or debtor in possession and after hearing on notice as

the court may direct, the court may authorize the redemption of property from a lien or from a sale to enforce a lien in accordance with applicable law.

wise, a debtor confronted with a creditor unwilling to execute a renegotiation may retain the secured collateral by redeeming it for its fair market value, which value may be substantially less than the contractual indebtedness. However, *524(c) facially contemplates that the creditor, for whatever reason, may reject any and all tendered reaffirmation offers; § 524(c) envisions execution of an "agreement" which, by definition, is a voluntary undertaking ....*

*In re Bell,* 700 F.2d at 1056. (citations omitted) (emphasis added).[4]

Section 524(c) does not mandate reaffirmation of any debt. *See Vinson v. Farmer's Home Administration (In the Matter of Vinson),* 5 B.R. 32 (Bankr.N.D.Ga.1980) (Debtor may not unilaterally propose an agreement or order to require the creditor to reaffirm.); *Schmidt v. American Fletcher National Bank and Trust Co. (In re Schmidt),* 64 B.R. 226 (Bankr.S.D. Ind.1986) (Reaffirmation requires voluntary consent of both parties); *In re Whatley,* 16 B.R. 394 (Bankr.N.D.Ohio 1982) (Reaffirmation is a consensual action between parties). *See also Howard v. Howard (In re Howard),* 27 B.R. 894, 895 (Bankr.W.D.Ky.1983) ("Judicially coerced reaffirmation agreements are repugnant to the spirit of the Bankruptcy Code...."). The voluntary nature of reaffirmation agreements is emphasized by the escape clause each agreement is required to contain pursuant to § 524(c)(2), *supra.*

Further, Code § 524(d) requires that a debtor desiring to reaffirm a debt must appear before the court at a hearing at which the court is required to inform the debtor that he or she is not required under the provisions of title 11 or under nonbankruptcy law to reaffirm any debt.[5] *See In re Churchill,* 89 B.R. 878 (Bankr.Colo. 1988).

Section 524(c), as enacted under the 1984 Amendments, requires the attorney representing the debtor during the negotiation of a reaffirmation agreement to certify that the agreement "does not impose an undue hardship on the debtor or a dependent of the debtor." Further, the agreement must contain the rescission clause mandated by § 524(c)(2). Section 524(d) requires the court to inform a debtor desiring to reaffirm a debt of the voluntary nature of such an agreement and its implications. Neither § 524(c) nor (d) require the court to approve the agreement except where a pro se debtor seeks to reaffirm a debt.

Pursuant to the optional provisions of § 524(d), this court on May 11, 1988, entered General Order No. 88–2 which dispensed with discharge hearings and established procedures to be followed by debtors desiring to reaffirm debts. Procedurally, debtors in the Northern and Northeastern Divisions of this district are required to file reaffirmation agreements with the clerk prior to expiration of the bar date fixed in the order for meeting of creditors for filing complaints objecting to discharge under 11 U.S.C.A. § 727 (West 1979 & Supp.1988).[6]

**4.** The *Bell* court considered § 524(c) as enacted by the Bankruptcy Reform Act of 1978. As originally enacted, § 524(c) required every reaffirmation agreement to be approved by the court. The Bankruptcy Amendments and Federal Judgeship Act of 1984 substantially revised the reaffirmation provisions of the 1978 Act. Chief among these revisions is the requirement of the attorney declaration and the removal of court approval except as to debtors filing pro se. Notwithstanding the 1984 Amendments, the principles enunciated in *Bell* remain applicable to § 524(c) as presently enacted.

**5.** Section 524(d) provides in material part:
[I]f the debtor desires to make an agreement of the kind specified in subsection (c) of this section, then the court shall hold a hearing at

which the debtor shall appear in person and at such hearing the court shall
(1) inform the debtor—
(A) that such an agreement is not required under this title, under nonbankruptcy law, or under any agreement not made in accordance with the provisions of subsection (c) of this section; and
(B) of the legal effect and consequences of—
(i) an agreement of the kind specified in subsection (c) of this section; and
(ii) a default under such an agreement[.]
11 U.S.C.A. § 524(d) (West 1979 & Supp.1988).

**6.** This procedure comports with Bankruptcy Rule 4004 which provides in part:
(c) In a chapter 7 case, on expiration of the time fixed for filing a complaint objecting to discharge, the court shall forthwith grant the

At the reaffirmation hearings held pursuant to § 524(d), this court does not interject itself into the reaffirmation process other than is required under § 524(c)(5) and (6) and (d). The court recognizes that debtor's attorneys are in the best position to evaluate the effect of reaffirmation on their clients. Clearly, an attorney by affixing his signature to the declaration or affidavit required by § 524(c)(3) certifies that attorney's participation in the reaffirmation process and the accuracy of the representations contained therein to the best of the attorney's knowledge, information and belief. *See Fed.R.Bankr. P. 9011.*

■ Notwithstanding the relaxed provisions of § 524(c) under the 1984 Amendments respecting court approval, this court would in no way countenance overreaching by a secured creditor. The court would not hesitate in appropriate circumstances to utilize its equitable powers and interject itself into the reaffirmation process. Such a situation should, however, never occur where a debtor is represented by counsel. Congress' intent that the court rely upon the declaration and affidavit filed by counsel is made manifest under the 1984 Amendments by removal of the requirement of court approval except as to reaffirmation agreements entered into by pro se debtors.

In practice, reaffirmation hearings presently serve no useful purpose except for debtors filing pro se. Attorneys are rightly charged with the responsibility for advising their clients during the reaffirmation process. As is noted in the legislative history to the present § 524(c):

> discharge unless (1) the debtor is not an individual, (2) a complaint objecting to the discharge has been filed, or (3) the debtor has filed a waiver under § 727(a)(10). Notwithstanding the foregoing, on motion of the debtor, the court may defer the entry of an order granting a discharge for 30 days and, on motion within such period, the court may defer entry of the order to a date certain.
> Fed.R.Bankr.P. 4004.
> The court, as it has done in these cases, consistently defers the granting of a debtor's discharge upon expiration of the § 727 bar date if the debtor timely moves for additional time to file a reaffirmation agreement.

In all, the new section is designed to encourage the prompt execution and implementation of good faith reaffirmation agreements by eliminating the cumbersome and unnecessary prior approval procedures which inhibited debtors and creditors from consummating mutually acceptable debt retirement arrangements.

S.Rep. No. 98–65, 98th Cong. 1st Sess. 59, 60 (1983) (Senate Report accompanying S 445, Omnibus Bankruptcy Improvements Act of 1983, the forerunner to the Bankruptcy Amendments and Federal Judgeship Act of 1984).

## II

■ The debtors in the instant proceedings are asking the court to intervene in the negotiation of their respective reaffirmation agreements for the purpose of limiting the terms of those agreements. They argue, though incorrectly, that their original contracts executed with Leader Federal do not provide for attorney's fees in these circumstances.[7]

Debtors fail to recognize that the reaffirmation process involves negotiation. Even if debtors were correct in their assertions respecting the lack of a clause providing for attorney's fees in their original contracts, Leader Federal is nonetheless not prohibited from negotiating a provision for the payment of attorney's fees in its reaffirmation agreements. Likewise, the debtors are not prohibited from endeavoring to negotiate reaffirmation agreements with terms differing from those contained in their original contracts.[8]

**7.** Of the contracts attached to proofs of claim filed by Leader Federal in three of these cases, each contract contains a clause providing for attorney's fees upon default. Although a proof of claim was not filed in one of the cases, that contract is presumed to contain a similar clause.

**8.** For example, it would appear that interest rates, term of payment, amount of installment payments, methods for curing an arrearage, and the total amount of indebtedness to be reaffirmed are all factors to be considered by the debtor during the negotiation process. The latter is of special importance. Surely debtors and their attorneys would not dispute the wisdom of

Clearly, as in any negotiation process, give and take will be required. It appears to the court that, under circumstances involving reaffirmation, a debtor has considerable bargaining power. In the first place, the creditor must recognize that in the absence of reaffirmation its debt will be discharged leaving recourse against its collateral as its sole remedy. Secondly, the creditor must consider reaffirmation in terms of expenses associated with repossession and foreclosure. It must also consider the resale value of its collateral. Merchants and secured lenders are in business to make a profit. They recognize the impact of bankruptcy and realize the advantage of negotiating a reaffirmation agreement which maintains an existing security interest, retains personal liability on the debtor and continues an uninterrupted stream of payments. Foreclosing a security interest in property whose value is generally speculative would, in this court's opinion, be a creditor's least desirable option.

Debtors must also recognize that a secured creditor might well expect to recover attorney's fees for the trouble and expense it has encountered in protecting its secured interest during bankruptcy proceedings. This court over the years has had occasion to review a considerable number of reaffirmation agreements and is comfortable in stating that for the most part attorney's fees negotiated by secured parties and debtors are fair and reasonable.[9] During the course of negotiating a reaffirmation agreement, a debtor's attorney may determine that attorney's fees requested by a secured party are not fair and reasonable and will impose an undue hardship on the debtor or a dependent. Under such circumstances, that attorney cannot in good faith

execute the declaration or affidavit required by § 524(c)(3).

The court is mindful that the mobile homes at issue in the instant proceedings probably constitute the residences of the respective debtors. This factor does not, however, change the reaffirmation process required under § 524(c). Whether the debtors desire to retain possession of an automobile, household furnishings, mobile home, or other item of property, the statutory requirements involving reaffirmation remain constant. See In re Churchill, 89 B.R. at 879. It behooves debtors and their attorneys to thoroughly consider and discuss the redemption and reaffirmation options available prior to filing a case under Chapter 7. Redemption is, of course, the most attractive alternative as the debtor can force the secured creditor to accept payment of the fair market cash value of its collateral or the amount of its claim, whichever is less. High dollar consumer items such as automobiles and mobile homes do not lend themselves to redemption which requires a lump-sum cash payment. See Bell, 700 F.2d at 1055–57. This is not to say that redemption cannot be achieved through installment payments for it most certainly can: (1) if the debtor and creditor agree that the debtor may redeem by installments and the parties comply with the reaffirmation provisions of § 524(c);[10] (2) by the debtor's filing of a petition under Chapter 13 of title 11.[11]

Chapter 13 is designed to provide a debtor a fresh start through rehabilitation. On the other hand, Chapter 7 provides a debtor a fresh start through liquidation. As reaffirmation envisions the retention of debt beyond discharge it is to some extent inconsistent with the fresh start provisions of Chapter 7. No doubt this factor influenced

---

endeavoring to negotiate a reaffirmation agreement to reduce the amount of prepetition indebtedness to a sum more commensurate with the value of the collateral which is to secure the reaffirmed debt.

9. Many reaffirmation agreements do not contain provisions providing for payment of attorney's fees associated with the debtor's default or the preparation and execution of the reaffirmation agreement.

10. In which event the debtor has not redeemed the property pursuant to 11 U.S.C.A. § 722 (West 1979), but has reaffirmed the debt pursuant to 11 U.S.C.A. § 524(c) (West Supp.1988).

11. The "cramdown" provisions of Chapter 13 authorize redemption by installment over a creditor's objections. 11 U.S.C.A. § 1325(a)(5) (West 1979 & Supp.1988). See Bell, 700 F.2d at 1057 and cases cited therein.

Congress to include the Miranda warning approach mandated by § 524(c) as originally enacted under the Bankruptcy Code of 1978. The Congressional philosophy has not been abrogated by the 1984 Amendments. Its implementation has implicitly been shifted to the debtor's attorney.

In their briefs, debtors' attorneys cite *Mellon Bank v. Sholos (In re Sholos)*, 11 B.R. 782 (Bankr.W.D.Pa.1981), for the proposition that the bankruptcy court is required to find that attorney's fees requested in a reaffirmation agreement are reasonable and that the property will support the debt. *Sholos* is inapposite: it was decided prior to the 1984 Amendments and the reaffirmation agreement required court approval. Nonetheless, certain statements of the *Sholos* court are noteworthy:

> From the standpoint of an individual debtor, the primary purpose of filing a petition under the Bankruptcy Code is to relieve the honest debtor from the weight of oppressive indebtedness and to provide him with a "fresh start" from previous obligations and responsibilities. This is achieved by a discharge of the debtor's obligations.
>
> To the extent that a debtor reaffirms debts, he "undoes" the discharge of his personal obligation to pay. To insure that a debtor does not forfeit his basic rights without due knowledge of the consequences, the Bankruptcy Code establishes a strict procedure to obtain a valid reaffirmation....

*Sholos*, 11 B.R. at 784. (citations omitted).

The strict procedures essential to a valid reaffirmation originally required to be considered by the court under § 524(c) as a prerequisite to approval are now factors to be considered by the debtor's attorney. It is the responsibility of that attorney to certify, inter alia, that the agreement "does not impose an undue hardship on the debtor or a dependent of the debtor." 11 U.S. C.A. § 524(c)(3)(B) (West Supp.1988).

In their briefs, debtors' attorneys state: "The debtors' position is that an undue hardship would result if they are required

to pay attorney's fees when the collateral is not worth enough to pay the underlying debt." *Pre-trial Brief of Debtors Pendlebury and Arnett*, at p. 4.[12] The conclusion is inescapable: debtors' attorneys have determined that the reaffirmation agreements proposed by Leader Federal impose an undue hardship on the debtors and they cannot, therefore, execute the declarations or affidavits required by § 524(c)(3). In effect, the debtors now invite the court to join the reaffirmation process and dictate to Leader Federal what it can and cannot include in its agreements in order to make those agreements palatable to the debtors and their attorneys. Not only is such a procedure not sanctioned by § 524(c), its implementation could, it appears, make the court the chief architect of all future reaffirmation agreements. If debtors were entitled to call upon the court to determine the propriety and amount of attorney's fees requested by secured creditors would they not also be entitled to call upon the court to determine appropriate interest rates, lengths of extensions of contract payment terms, default provisions, and other terms all of which are the proper subject of negotiation under § 524(c).

### III

The debtors' motions seeking to strike the attorney's fee provision of the four reaffirmation agreements at issue will be denied. Pursuant to Fed.R.Bankr.P. 4004(c), the court will defer entry of an order granting a discharge to the respective debtors for fifteen days. An appropriate order will be entered.

This Memorandum constitutes findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052.

---

**12.** By a "Motion" filed October 25, 1988, attorneys for the debtors Williams and Liverman

adopted the brief filed on behalf of Pendlebury and Arnett.