In re Donald Ray WALKER, Debtor.

In re Misty Renee McCOY, Debtor.

Bankruptcy Nos. 95–33171, 96–30071.

United States Bankruptcy Court,
E.D. Tennessee.

March 22, 1996.

Richard M. Mayer, Knoxville, Tennessee, for Debtor Donald Ray Walker and Debtor Misty Renee McCoy.

Lacy & Winchester, P.C., J. Michael Winchester, Knoxville, Tennessee, for First Tennessee Bank National Association.

Maurice K. Guinn, Knoxville, Tennessee, Chapter 7 Trustee for Estate of Donald Ray Walker.

John P. Newton, Jr., Knoxville, Tennessee, Chapter 7 Trustee for Estate of Misty Renee McCoy.

### MEMORANDUM ON DEBTORS' MOTIONS FOR CERTIFICATES OF CONTEMPT

RICHARD S. STAIR, Jr., Chief Judge.

The court, for purposes of resolving common issues, has consolidated two motions, one filed by the debtor in the individual case of Donald Ray Walker, and the other filed by the debtor in the individual case of Misty Renee McCoy. Each motion, entitled "Motion for Certificate of Contempt," was filed February 8, 1996, seeking an order requiring First Tennessee Bank Credit Card Division (First Tennessee) to cease and desist from violating the automatic stay of Bankruptcy Code § 362(a). The debtors have not requested an award of monetary damages.

In each case, First Tennessee filed a response and supporting brief on February 27, 1996, and the parties filed Stipulations on March 15, 1996.[1] Debtor Misty Renee

---

**1.** The Stipulations filed in the *Walker* case erro-  neously recite that they are of "Misty McCoy"

McCoy filed a brief in support of her motion on March 19, 1996. No brief was filed by Donald Ray Walker. The court heard oral argument on March 21, 1996, on the issue of whether First Tennessee should be held in civil contempt pursuant to Bankruptcy Code § 362(h) for alleged violations of the automatic stay of Bankruptcy Code § 362(a)(6).

These are core proceedings. 28 U.S.C.A. § 157(b)(2) (West 1993).

## I

In the *Walker* case, the debtor, Donald Ray Walker, commenced his bankruptcy case under Chapter 7 on November 28, 1995. By letter dated January 17, 1996, from First Tennessee to Mr. Walker, First Tennessee requested that Mr. Walker reaffirm his unsecured credit card debt of $4,906.74. The letter sent to Mr. Walker reads as follows:

> Dear Mr. Walker:
>
> First Tennessee Bank Credit Card Division was notified of your recent bankruptcy filing. We are concerned, and understand, that difficult economic conditions have caused good customers, such as yourself, to seek relief in the bankruptcy courts. We believe you are a valuable customer, and would like to offer you an opportunity to maintain your First Tennessee Bank credit card. I'm sure you are aware of the benefits of having a First Tennessee Bank credit card such as:
>
> — Vacation necessities such as Hotel and Car Rental reservations.
>
> — Utility of the card at locations Worldwide.
>
> — Access to the automatic teller 24 hours a day, 7 days a week.
>
> — Telephone and mail order purchasing.
>
> — And many more.
>
> This offer is not intended to be an action to collect, assess or recover a pre-petition claim against you, or otherwise violate the automatic stay created by your bankruptcy filing. A copy of this letter has been forwarded to your attorney, and we encourage you to review the information and

> discuss this opportunity with your counsel. The bankruptcy laws allow you to reaffirm [sic] a debt if you choose to do so, and so long as it will not cause a financial hardship to yourself or your dependents. Our offer is subject to the following conditions:
>
> — You complete and return the enclosed reaffirmation package in the postage paid envelope within 15 days to our office.
>
> — Proof of income is received such as a photocopy of a payroll check issued to you within the past thirty (30) days.
>
> — No charges are allowed to be made on your account until the review process is completed. Your charge privileges have been suspended until further notification. Use of the card during this period may result in declining your request.
>
> — If approved, the credit line on your account will be reduced to its current balance. A new cardholder agreement will be sent to you outlining the Terms and Conditions that may apply to the account.
>
> We would appreciate your reviewing and completing the enclosed information, and look forward to youur [sic] prompt response. If you or your attorney have any questions, please call us at 901–452–8900, ext. 213.
>
> Sincerely,
>
> /s Larry N White
>
> Larry White
>
> Bankruptcy Reaffirmation
>
> Enclosure
>
> Copy to: Richard M. Mayer

Attached to the letter is the following proposed reaffirmation agreement:

> The undersigned Debtors, (hereinafter referred to as "You" or "Your," whether one or more), agrees with First Tennessee Bank, Credit Card Division, as follows:
>
> 1. On 11–28–95 You filed a petition in the United States Bankruptcy Court for the

and "First Tennessee Bank National Association." The court deems that the Stipulations apply to Donald Ray Walker, not Ms. McCoy.

Eastern District of Tennessee seeking relief under the United States Bankruptcy Code. The Court entered an Order for Relief with respect to Your petition.

2. In schedules accompanying Your petition, You listed a debt to the Creditor. That debt is evidenced by a Cardholder Agreement which You executed on 06–01–77. You realize and acknowledge that Your debt is a valid debt with an unpaid balance as of the time of the filing of the petition initiating this case of $4,906.76, and that Your debt is presently due and owing to the Creditor.

3. You are aware that the debt owed to the Creditor maybe [sic] dischargeable in the bankruptcy proceeding that You initiated by filing Your petition and that if the debt is discharged, You would be under no legal obligation to repay the Creditor. You are also aware that You are not required by either the law or prior agreements to sign this Reaffirmation Agreement.

4. You agree that this Reaffirmation Agreement is in Your best interest and that it does not impose an undue hardship upon You or any of Your dependents. You understand that the effect of this Reaffirmation Agreement is to bind You to repay the debt to the Creditor. You also understant [sic] that You can rescind this agreement up to the date of discharge for Your petition.

5. You promise and agree that You will pay the debt to the Creditor in accordance with the original and continuing Terms and Conditions agreed by You and the Creditor in the contract or instrument described in paragraph two (2), and that You reaffirm all of those Terms and Conditions.

Dated this _____ day of _____, 19___

_____
Donald Ray Walker          Debtor

_____
                          Debtor

First Tennessee Bank, Credit Card Division

By:_____
                          Date

In the *McCoy* case, the debtor, Misty Renee McCoy, commenced her case under Chapter 7 on January 9, 1996. By letter dated January 29, 1996, to which a proposed reaffirmation agreement was attached, First Tennessee requested Ms. McCoy to reaffirm her unsecured credit card debt of $583.29. The letter and proposed reaffirmation agreement sent to Ms. McCoy are identical in all material respects to those sent to Mr. Walker.

## II

The automatic stay provisions of the Bankruptcy Code provide in material part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

    . . . .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

    . . . .

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C.A. § 362 (West 1993 & Supp.1996).

Reaffirmation of a debt is accomplished pursuant to § 524(c) of the Bankruptcy Code, which provides in material part:

An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—

(1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;

(2)(A) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to

discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim; and

(B) such agreement contains a clear and conspicuous statement which advises the debtor that such agreement is not required under this title, under nonbankruptcy law, or under any agreement not in accordance with the provisions of this subsection;

(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that—

(A) such agreement represents a fully informed and voluntary agreement by the debtor;

(B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

(C) the attorney fully advised the debtor of the legal effect and consequences of—

(i) an agreement of the kind specified in this subsection; and

(ii) any default under such an agreement;

(4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim. . . .

11 U.S.C.A. § 524(c) (West 1993 & Supp. 1996); *see In re Pendlebury,* 94 B.R. 120 (Bankr.E.D.Tenn.1988).

The creditor, First Tennessee, relies on numerous cases to support its position that sending the foregoing letter and proposed reaffirmation agreement to each debtor did

not violate the automatic stay. In *Brown v. Pennsylvania State Employees Credit Union (In re Brown),* 851 F.2d 81, 84 (3d Cir.1988), the credit union notified the debtor through a "mildly worded" letter that it would bar her from membership unless she reaffirmed her outstanding debt. The Third Circuit held that as a matter of law, a creditor does not violate Bankruptcy Code § 362(a)(6) or § 524(a)(2) [2] "merely by informing a bankruptcy petitioner that it will refuse to deal with her unless she reaffirms her debt." *Id.* at 86. The court based its holding on numerous findings, including that the automatic stay protects debtors "not from communication with creditors, but from the threat of immediate action by creditors, such as a foreclosure or a lawsuit." *Id.* The court in *Brown* also found that the credit union's withdrawal of services upon the debtor's failure to reaffirm the debt was not coercive. Rather, the communication from the credit union allowed the debtor to choose between discharge or reaffirmation. The Third Circuit noted that if such communication were barred, debtors might be prevented from timely making the choice to reaffirm their debts and retain certain creditors' services and credit ratings.

The Bankruptcy Court for the Eastern District of Michigan has established a more flexible approach to determining whether a creditor's initiation of reaffirmation negotiations violates the automatic stay. *In re Briggs,* 143 B.R. 438 (Bankr.E.D.Mich.1992) (Spector, J.). In *Briggs,* the court determined that not all actions by a creditor intended to motivate the debtor to reaffirm a debt violate the automatic stay. Rather, the court held that § 362(a)(6) is only violated "if the [creditor's] action (1) could reasonably be expected to have a significant impact on the debtor's determination as to whether to repay, and (2) is contrary to what a reasonable person would consider to be fair under the circumstances." *Id.* at 453. In applying this two-part test, the court advised:

**2.** Section 524(a)(2) provides:

A discharge in a case under this title—

. . . .

(2) operates as an injunction against the commencement or continuation of an action,

the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived. . . .

11 U.S.C.A. § 524(a)(2) (West 1993).

Broadly speaking, I believe that an action by a creditor which is illegal satisfies the second criterion, unless there is a colorable argument to be made for the legality of the action. Most people would agree that it is inappropriate for a creditor to attempt to pressure a debtor into repaying a debt by taking (or threatening to take) an action if the creditor could not advance a plausible legal theory establishing the existence of the asserted right.

Conduct which amounts to harassment would of course also be unfair for purposes of § 362(a)(6). Again, any reasonable person would be offended by the notion that a creditor could, for example, make repeated late night phone calls to the debtor or threaten to place ads in the local newspaper calling the debtor a deadbeat as means of collecting a prepetition debt.

These latter examples demonstrate that "harassment" really should be viewed as a subspecies of "coercion," rather than as a form of conduct which is distinct from it. So instead of speaking in terms of "harassment or coercion," as many courts do, it is more appropriate to refer to "harassment or other forms of coercion that are unfair."

*Id.* at 453–54.

■ The parties have stipulated that neither debtor was "coerced or threatened by the contents of the letter" received from First Tennessee,[3] and that in each case "First Tennessee has taken no action postpetition other than sending the letter ... to the Debtor with a photocopy to the Debtor's attorney, Richard M. Mayer." Although the debtors were not coerced or threatened by the letters, the court finds that because First Tennessee's proposed reaffirmation agreement and the terms set forth in the letter sent to each debtor do not comply with the mandatory provisions of Bankruptcy Code

§ 524(c), the creditor's action in both cases "(1) could reasonably be expected to have a significant impact on the debtor's determination as to whether to repay, and (2) is contrary to what a reasonable person would consider to be fair under the circumstances." *Briggs,* 143 B.R. at 453.

First Tennessee's letter to each debtor required that the "reaffirmation package" be executed and returned within fifteen days. Both Ms. McCoy and Mr. Walker would have been required to accept First Tennessee's reaffirmation offer in February 1996. However, the parties stipulate that under the Bankruptcy Code Mr. Walker had through March 11, 1996, to reaffirm his debts, and Ms. McCoy has through April 22, 1996, to reaffirm her debts.[4] The mandatory fifteen-day term of First Tennessee's reaffirmation offers set forth in the letters without further explanation appears coercive and implies that the opportunity to reaffirm debts would be lost well before the expiration of the initial deadlines provided for under the Bankruptcy Code and Rules.

In addition, the proposed reaffirmation agreement sent to each debtor does not meet the requirements of § 524(c). A reaffirmation agreement must contain "clear and conspicuous statement[s] which advise[] the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim," and "that such agreement is not required under ... [Title 11], under nonbankruptcy law, or under any agreement not in accordance with the provisions of ... [§ 524(c) ]." § 524(c)(2). First Tennessee's proposed reaffirmation agreement only provides: "You are also aware that You are not required by

---

3. Specifically, the Stipulations in the *McCoy* case provide that the debtor "did not feel coerced or threatened," and the Stipulations in the *Walker* case provide "that the Debtor was not coerced or threatened."

4. Each date represents the bar date fixed pursuant to Fed.R.Bankr.P. 4004(a) and 4007(c) for filing complaints objecting to discharge or to determine the dischargeability of debts, respectively. The court presumes the parties contem-

plated by this stipulation that an order granting each debtor's discharge would be entered the day following the bar date thus precluding the subsequent execution of a reaffirmation agreement pursuant to § 524(c)(1), which mandates that such agreements be "made before the granting of the discharge under section 727." In fact, Mr. Walker's discharge, notwithstanding expiration of the March 11, 1996 bar date, was granted on March 14, 1996.

either the law or prior agreements to sign this Reaffirmation Agreement.... You also understant [sic] that You can rescind this agreement up to the date of discharge for Your petition." These provisions are insufficient to meet the requirements of § 524(c)(2). First Tennessee's reaffirmation agreement should recite in "clear and conspicuous" terms the language contained in § 524(c)(2).

The Bankruptcy Code also requires that in order to reaffirm a debt, the reaffirmation agreement must be filed with the court and must be

accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that—

(A) such agreement represents a fully informed and voluntary agreement by the debtor;

(B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

(C) the attorney fully advised the debtor of the legal effect and consequences of—

(i) an agreement of the kind specified in this subsection; and

(ii) any default under such an agreement....

§ 524(c)(3). First Tennessee advised in its letter to each debtor: "A copy of this letter has been forwarded to your attorney, and we encourage you to review the information and discuss this opportunity [of reaffirmation] with your counsel." However, there is no signature line for the debtor's attorney on the reaffirmation agreement, and there is no mention that the debtor's attorney will be required to represent to the court that the reaffirmation agreement does not impose an undue hardship and was voluntarily executed by the debtor who was fully informed of the

legal effect and consequences of the agreement and any subsequent default. Rather, the proposed reaffirmation agreement informs the debtor that after completing and returning the "reaffirmation package" the debt is reaffirmed and must be paid. This is misleading and an incorrect representation of the law. The debtor's execution of a reaffirmation agreement is but one step to an end result. If the reaffirmation agreement is not filed with the court or if the reaffirmation agreement is disapproved because, for instance, the debtor's attorney cannot or does not make the representations required under § 524(c)(3), and the court cannot make the findings required by § 524(c)(6),[5] the debt will not be reaffirmed and the debtor will not be required to satisfy the obligation pursuant to the terms of the reaffirmation agreement. In addition, the reaffirmation only becomes effective if the reaffirmation agreement is not rescinded "prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later." § 524(c)(4).

■ Although reaffirmation opportunities under § 524(c) should not be limited by an overly zealous interpretation of § 362, creditors who initiate reaffirmation negotiations must strictly follow the mandates of § 524(c). Any failure to do so will be presumed by this court to subject debtors to harassment and coercion from which they are protected under § 362. Based on the deficiencies contained in First Tennessee's proposed reaffirmation agreement combined with the fifteen-day deadline imposed by First Tennessee and certain statements contained in its letter seeking reaffirmation, the court finds that First Tennessee failed to comply with the mandates of § 524(c) and violated the automatic stay provisions of § 362(a)(6).

■ Finally, although not addressed by the parties in their briefs, the court deems it appropriate to discuss one other concern it has regarding First Tennessee's communi-

---

**5.** Section 524(c)(6) provides:

(A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as—

(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and

(ii) in the best interest of the debtor.

(B) Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property.

11 U.S.C.A. § 524(c)(6) (West 1993).

cation with the debtors. Both Mr. Walker and Ms. McCoy are represented by counsel, yet, First Tennessee focused its reaffirmation efforts exclusively on the debtors.[6] First Tennessee is a sophisticated lender. It is actively involved in numerous consumer bankruptcy cases in this district and is well aware of the declaration or affidavit required of a debtor's attorney by § 524(c)(3). To ignore the role of a debtor's attorney in the reaffirmation process suggests an attempt to evade or to encourage the debtor to evade the § 524(c)(3) requirement. While this court, for purposes of the present contested proceedings, chooses to draw no inference from First Tennessee's lack of communication with the debtors' attorney and makes no finding that First Tennessee is required to negotiate proposed reaffirmation agreements with debtors' attorneys, it does suggest that the attorneys' role not be downplayed. The court can state with some degree of certainty that individual debtors not represented by an attorney during the course of negotiating an agreement reaffirming a credit card debt will have a difficult time persuading this court that such an agreement does not impose "an undue hardship on the debtor" and is "in the best interest of the debtor." § 524(c)(6).

An order consistent with this Memorandum will be entered in each case.

---

6. Notwithstanding that a copy of each letter was forwarded to the debtors' attorney, the only advice the debtors were given is contained in a statement in each letter that "we encourage you to ... discuss this opportunity with your counsel."