**In re Jilma ADAMS, Debtor.**

**In re Jose A. Tolentino, Debtor.**

**Bankruptcy Nos. 98–B–45861 (JHG), 98–B–45879 (JHG).**

United States Bankruptcy Court, S.D. New York.

Feb. 2, 1999.

L.A. Grossman & Associates, P.C., New York City, by Lawrence A. Grossman, for Jose Tolentino.

Penny M. Johns, Assistant Vice President, Hicksville, New York, Legal Services Plan—Local 237, New York City, by Matthew Cooper, for Jilma Adams.

Steinberg, Fineo, Berger & Burlant, P.C., Garden City, New York, by Heath S. Berger, for Capital One Services, Inc.

### DECISION AND ORDER DENYING APPLICATIONS TO APPROVE REAFFIRMATION AGREEMENTS

JEFFRY H. GALLET, Bankruptcy Judge.

### I. INTRODUCTION

Debt reaffirmation agreements are an exception to the fundamental principle of United States bankruptcy law that an honest debtor receives a fresh start. Congress, realizing the importance of the fresh start principle, and, also, that in certain situations debtors may wish to reaffirm their pre-petition debts for good reason, enacted 11 U.S.C. § 524(c). That section permits reaffirmations in certain limited circumstances, following specific statutory procedures and only under the supervision of the bankruptcy court or, when applicable, the debtor's attorney. To pervert those procedures is to strike at the heart of the bankruptcy system.[1]

### II. CASES BEFORE THE COURT

There are two unrelated reaffirmation agreements before me. The first is in the case of Jilma Adams ("Adams"), in that agreement Adams seeks to reaffirm $2,100.00 of pre-petition debt she owed to Capital One Services, Inc. (the "Adams Agreement").

---

1. Indeed, I am not alone in my concern. My research discloses that my judicial brothers and sisters across the country have similar concerns. *See, e.g., Liptz & Roberts, Chartered Pension Plan Trust v. Stevens (In re Stevens),* 217 B.R. 757 (Bankr.D.Md.1998); *In re James,* 120 B.R. 582 (Bankr.W.D.Okla.1990); *In re Gardner,* 57 B.R. 609 (Bankr.D.Me.1986); *In re Jackson,* 49 B.R. 298 (Bankr.D.Kan.1985).

The second is in the case of Jose A. Tolentino ("Tolentino"), in that agreement Tolentino seeks to reaffirm $408.69 of pre-petition debt he owed to Chase Manhattan Bank (the "Tolentino Agreement"). Although the cases are unrelated, they raise the same issue and I decide them together. For the reasons set forth below, I find the agreements defective and ineffective. Accordingly, the debtors, their creditors and counsel for all parties are directed to appear before me on February 18, 1999 at 9:30 a.m. for further proceedings.

## III. FACTS

### A. Adams Case

Adams filed a petition under chapter 7 of the Bankruptcy Code on August 13, 1998. The Adams Agreement was filed with the Clerk of this Court on December 2, 1998. Adams seeks to reaffirm $2,100.00 of pre-petition credit card debt owed by the debtor to Capital One Services, Inc. ("Capital One"). There is no indication that Adams will receive any benefit from signing the Adams Agreement. Adams, her attorney, Matthew Cooper, Esq., and Heath S. Berger, Esq., attorney for Capital One, signed the Adams Agreement. The Adams Agreement does not contain a separate statement, sworn or unsworn, by Adams' attorney indicating that he informed his client of the legal consequences of her agreement to enter into it.

Furthermore, the Adams Agreement is styled as an adversary proceeding—complete with a caption. This is deceptive. No proceeding has been commenced, a fact well known to the creditor since it has also submitted a request to extend its time to file a nondischargeability complaint. Captioning an agreement as an adversary proceeding is inexcusable because it is potentially misleading to the debtor and to the court.

### B. Tolentino Case

Tolentino filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 14, 1998. Tolentino and Chase Manhattan Bank ("Chase") filed the Tolenti-

no Agreement with the Clerk of this Court on December 3, 1998. On the petition date, Tolentino owed $817.39 on his Chase Visa credit card. The Tolentino Agreement provides that he reaffirm $408.69, one-half of the debt. The reaffirmed debt is to be paid in twenty-four monthly instalments of $17.02. The agreement also provides, among other things, that after Tolentino makes the first payment of $17.02, Chase will issue him a new credit card with a $500 credit line, at 17.9% interest.

Tolentino and Penny M. Johns, Assistant Vice–President of Chase, signed the Tolentino Agreement. The Tolentino Agreement contains a section headed "DECLARATION OF ATTORNEY." Under that heading, the following unsworn statement is followed by the signature of Lawrence A. Grossman, Esq., Tolentino's attorney:

> I, Lawrence A. Grossman, the attorney for the Debtor in the above captioned bankruptcy proceedings, declare that I represented the Debtor during the negotiation of the foregoing Reaffirmation Agreement and that said Reaffirmation Agreement represents a fully informed and voluntary agreement by the Debtor, that the Reaffirmation Agreement does not impose any undue hardship on the Debtor or a dependent of the Debtor, and that I fully advised the Debtor of the legal consequences of the Reaffirmation Agreement and the ramifications of any default occurring under this Reaffirmation Agreement.

## IV. DISCUSSION

The issue presented here is whether the reaffirmation agreements, as submitted, comply with the requirements of the Bankruptcy Code.[2] To be enforceable, a reaffirmation agreement must comply with 11 U.S.C. § 524(c), which provides, in pertinent part:

> An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under

**2.** I have jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for

the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 U.S.C. § 157(b)(2)(A).

this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—

. . .

(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that—

(A) such agreement represents a fully informed and voluntary agreement by the debtor;

(B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

(C) the attorney fully advised the debtor of the legal effect and consequences of—

(i) an agreement of the kind specified in this subsection; and

(ii) any default under such an agreement;

11 U.S.C. § 524(c) (1994).

Congress intended that reaffirmations be a limited exception to the general rule that bankruptcy discharges a debtor's pre-petition obligations and affords an honest debtor a fresh start. If not represented by counsel, the debtor must personally appear in court where the bankruptcy judge must explain the nature of the agreement to the debtor. The judge must independently determine whether the agreement represents an undue hardship to the debtor or a dependent of the debtor, and whether the agreement is in the debtor's best interests. *See* 11 U.S.C. § 524(c)(6)(A) (1994); *In re Walker*, 194 B.R. 165, 170 (Bankr.E.D.Tenn.1996). Where the debtor is represented by counsel, Congress transferred the Court's responsibility of assuring that the reaffirmation agreement is appropriate to the debtor's lawyer. In § 524(c), Congress emphasized the importance of counsel's responsibilities in connection with reaffirmation agreements by mandating that the reaffirmation agreement be accompanied by a counsel's declaration or affidavit and not a mere statement. The debtor's attorney must

declare, affirm or swear that: (1) the agreement represents a fully informed and voluntary agreement by the debtor; (2) the agreement does not impose a hardship on the debtor or a dependent of the debtor; and (3) the attorney has fully advised the debtor of the legal effect and consequences of the agreement and any default thereunder. *See* 11 U.S.C. § 524(c)(3) (1994); M. Donald Davis, Jr., *What Every Lawyer Should Know About Reaffirmation and Redemption in Chapter 7 Bankruptcy Cases*, 58 Ala.Law. 296, 297 (1997).

To have effect, the reaffirmation agreements before me must contain an affidavit or declaration by the debtors' attorneys that satisfy the statutory requirements. I address that question.

### A. The Adams Agreement

The Adams Agreement is defective on its face and does not satisfy the requirements of the statute. There is nothing even remotely resembling an attorney's declaration or affidavit. It does not contain a separate recitation by debtor's counsel indicating that Adams was informed of her rights or the legal consequences of reaffirming this debt.

The agreement is void *ab initio*. The creditor may neither enforce it nor receive payments pursuant to it.

### B. The Tolentino Agreement

The Tolentino Agreement requires somewhat more analysis, but the outcome is the same. The "DECLARATION OF ATTORNEY" is not an affidavit because it is unsworn. *See Black's Law Dictionary* 58 (6th ed.1990) (defining an affidavit as "[a] written . . . declaration or statement of facts . . . confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation.").

Thus, the dispositive question is whether the statement qualifies as a "declaration." The answer to this question is not straightforward. Section 101 of the Bankruptcy Code does not provide guidance. In addition, the Federal Rules of Bankruptcy Procedure and the legislative history of the statute

are similarly unavailing. Moreover, neither *Black's* nor *The Random House Dictionary of the English Language,* (unabridged ed.1967), are helpful.

To resolve this problem, I look to § 1746 of the Judiciary Law,[3] which provides for the use of unsworn declarations in lieu of affidavits in virtually all federal proceedings, including bankruptcy cases. *See, e.g.,* Fed. R.Bankr.P. 9011; *Smith v. Muscatell (In re Muscatell )* 106 B.R. 307 (Bankr.M.D.Fla. 1989).

> Section 1746 provides, in relevant part:
> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported ... or proved by the sworn *declaration,* verification, certificate, statement, oath, or affidavit in writing of the person making the same ... such matter ... may be supported ... or proved by the *unsworn declaration* ... or statement in writing which is subscribed by him, *as true under penalty of perjury ....*

28 U.S.C. § 1746 (1994) (emphasis added).

The statute provides that declarations come in two varieties, sworn and unsworn. It also provides that in order for an unsworn declaration, as we have here, to be effective it must be made under penalty of perjury.

Other courts interpreting this statute uniformly require that unsworn declarations include language regarding the penalty of perjury. *See In re Muscatell,* 106 B.R. at 308 ("[a]n unsworn declaration not made under penalty of perjury will not satisfy the verification requirement under 28 U.S.C. § 1746.") (citing *United States v. Pilla,* 82–2 U.S.Tax Cas. (CCH) P9500 (D.Minn.1982)). *See also Hameed v. Pundt,* 964 F.Supp. 836, 840 (S.D.N.Y.1997); *Bleavins v. United States,* 807 F.Supp. 487, 489 (C.D.Ill.1992), *aff'd,* 998 F.2d 1016 (7th Cir.1993).

■ While I can find no case applying 28 U.S.C. § 1746 to § 524(c) of the Bankruptcy Code, there are sound legal and equitable reasons for making such an application. First, the broad language of § 1746 is clearly intended to serve as a standard in all areas of federal practice. As discussed above, § 1746 has been applied to other facets of bankruptcy practice. Therefore, applying § 1746 to § 524(c) of the Bankruptcy Code is logical and appropriate.

■ Second, reaffirmation agreements defeat the important bankruptcy principle of giving debtors a fresh start, because they burden individuals with the obligation to repay dischargeable pre-petition debts after bankruptcy.[4] *See Republic Bank v. Getzoff (In re Getzoff )* 180 B.R. 572, 574 (9th Cir. BAP 1995) ("[t]he reaffirmation rules are intended to protect debtors from compromising their fresh start by making unwise agreements to repay dischargeable debts."). In order to protect such debtors, and the goals of bankruptcy, reaffirmation agreements should be strictly construed. *See In re Kamps,* 217 B.R. 836 (Bankr.C.D.Cal.1998) ("[b]ecause of the danger that creditors may coerce debtors into undesirable reaffirmation agreements, reaffirmations are not favored under the Bankruptcy Code, and strict compliance with the specific terms in section 524 is required."); *In re Petersen,* 110 B.R. 946, 949–50 (Bankr.D.Colo.1990) (same). Such strict construction requires that each word of the statute be given meaning and effect. In this case, the only reasonable meaning for "declaration" is the one provided by § 1746 of the Judiciary Law. Indeed, the legislative history of the Bankruptcy Reform Act of 1994 compels me to believe that Congress intended reaffirmation agreements to be executed with a maximum of formality. The following quote from the Senate's report on the Bankruptcy Reform Act of 1994 is instructive.

> To ensure that the debtor who chooses reaffirmation is fully informed, the attorney is required to make several *declarations* as to the debtor's knowledge and

---

**3.** 28 U.S.C. 1746 (1994).

**4.** While all debtors have a moral obligation to repay their debts, *see In re Barnes,* 969 F.2d 526, 530 (7th Cir.1992), it is rarely in their best interest to reaffirm a debt which they otherwise would not have to pay. The Bankruptcy Code explicitly states that nothing in § 524(c) or (d) prevents a debtor from voluntarily repaying any debt. The creditors here seek to transform that moral obligation and voluntary payments into a legally enforceable debt.

willingness to reaffirm a debt. Specifically, the attorney *must file an affidavit* indicating that the debtors are aware they have a right to discharge a debt and that the debtors have been completely advised of the possible ramifications of such a reaffirmation.

S.Rep. No. 103–168, sec. 104 (1993) (emphasis added).

Finally, attorneys play a critical role in protecting individual debtors from over-reaching creditors. *See In re Melendez,* 224 B.R. 252 (Bankr.D.Mass.1998) (explaining the aggressive and sometimes overzealous efforts by Sears to attain reaffirmation agreements from debtors, and, also, finding that debtors' counsel often signed "declarations" without informing themselves of the value of the underlying collateral or the extent to which the interest payments on the reaffirmed debt would unduly burden debtors); *In re Hovestadt,* 193 B.R. 382 (Bankr.D.Mass.1996) (finding that debtors' attorney, who had signed a "declaration," failed to inform his clients of their right to redemption); 32 *Bankr.Ct.Dec. (CCR), News & Comments* No. 25 (1998) (reporting that General Electric Capital Corp. had recently settled a lawsuit in which it was alleged that its agreements would be filed with the Bankruptcy Court).[5]

In this district and most others, in keeping with the statute, it is the practice of the Bankruptcy Courts to permit reaffirmation agreements, without a hearing, where the debtor is represented by counsel. *See In re Pendlebury,* 94 B.R. 120, 124 (Bankr. E.D.Tenn.1988) (noting that debtor's attorneys are often in the best position to evaluate the effect of reaffirmation on their clients). In effect, such practices entrust debtors' counsel with the congressionally mandated responsibility to inform their clients of the seriousness and often burdensome nature of these agreements. Despite such trust, in many cases, I must wonder whether debtors, allegedly represented by counsel, are truly aware of their rights. This area is much

abused. It causes me unease because the debtors involved in these reaffirmation agreements are frequently the least educated and sophisticated of those who appear in this court.

I note what experienced trial lawyers well know—the formality of testifying under oath and the sobering reminder of the penalties of perjury focus witnesses, deponents and affiants on the importance of the issues at hand.[6] This, I believe, was Congress' intent.

The Tolentino Agreement, therefore, is also defective on its face and void *ab initio.* The creditor may neither enforce it nor receive payments pursuant to it.

## V. CONCLUSION

Neither of the agreements are valid pursuant § 524(c)(3) of the Bankruptcy Code. The parties and their attorneys are directed to appear before me for a hearing pursuant to Section 524(c)(6)(A) at 9:30 a.m. on February 18, 1999 for a hearing on the approval of the reaffirmation agreements.

SO ORDERED.

---

5. Indeed, I too have observed that reaffirmation agreements are sometimes less than the finest hour of the consumer bankruptcy bar.

6. It is also a crime to lie in such a situation. *See* 18 U.S.C. § 1621 (1994). *See also United States v. Looper,* 419 F.2d 1405, 1406 (4th Cir.1969)

(noting that "[t]he incentive to tell the truth, [after swearing to do so], may be the mental anguish or loss of self-respect which would follow the telling of an untruth. To this may be added the possibility of prosecution and punishment for perjury.").