**In re Alan A. IZZO, Sr., Debtor.**

**Bankruptcy No. 96–10597.**

United States Bankruptcy Court,
D. Rhode Island.

June 3, 1996.

**12**

Janet J. Goldman, Warwick, RI, for Debtor.

### ORDER TO SHOW CAUSE:

*(1) WHY THE DEBTOR AND HIS AT-TORNEY SHOULD NOT BE SANC-TIONED FOR FILING FALSE AND/OR INACCURATE SCHEDULES AND DECLARATIONS; AND*

*(2) WHY THE REAFFIRMATION AGREEMENT SHOULD NOT BE STRICKEN AND/OR DECLARED VOID*

ARTHUR N. VOTOLATO, Bankruptcy Judge.

■ Before the Court is a Reaffirmation Agreement wherein the Debtor agrees to pay Citizens Bank $147.40 per month on an outstanding loan of $4,097.40, plus interest at 12.25% per annum. The loan is secured by a 1990 Acura Integra, worth approximately $9,000. *See* N.A.D.A. Official Used Car Guide, May 1996. The Debtor says in his schedules that his net monthly income is $1,682.48, with expenses of $2,074.34 per month (and the expense total doesn't even include the proposed additional $147.40 monthly payment to Citizens). *See* Schedule J. In support of this arrangement, Debtor's counsel certified in the Reaffirmation Agreement that: "This agreement represents a fully informed and voluntary agreement that does not impose an undue hardship on the debtor or any dependent of the debtor. I have fully advised the debtor of the legal effect and consequences of Reaffirmation, including default." Why an attorney would sign such an affidavit *in this case* is, to us, incomprehensible.[1]

■ Clearly, something is wrong with either the schedules, the attorney's certification, the seriousness with which reaffirmation agreements are being treated by creditors, debtors, and their attorneys,[2] or this Court's ability to read.

To determine which of the foregoing alternatives applies, Alan A. Izzo, Sr., and his attorney, Janet Goldman, Esq., are **ORDERED TO SHOW CAUSE, in writing, on or before June 14, 1996,** why SANCTIONS should not be imposed against them for the filing of false or misleading schedules and declarations, and why the affidavit of Janet Goldman should not be stricken, and the Reaffirmation Agreement declared void.

---

1. Based on his own income and expense figures, there is no way the Debtor can meet his monthly obligations, and it is inevitable that, sooner rather than later, the Debtor will default and his car will be repossessed and sold. Thereafter, if this Reaffirmation Agreement is enforceable, the Debtor will be left owing the deficiency, if any. Without a reaffirmation agreement in force, in the event of default, the Debtor stands to lose only the security.

2. For many years we independently reviewed the reasonableness of *all* reaffirmation agreements, and *sua sponte* disapproved those which were not in the debtor's interest. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 80–81 (1978); S. Rep. No. 65, 98th Cong., 1st Sess. 59, 60 (1983). Then the 1984 amendments to the Bankruptcy Code relieved the Court of that duty, and shifted the oversight responsibility to Debtor's counsel.

*See In re Grinnell*, 170 B.R. 495 (Bankr.D.R.I. 1994). After *Grinnell*, we discontinued the practice of reviewing reaffirmation agreements which contained an affidavit by debtor's counsel in the manner set forth in 11 U.S.C. § 524(c)(3).

It appears over time, however, that the absence of Court oversight *may* be resulting in overreaching by certain creditors, misrepresentations by certain debtors and/or their attorneys, and a perversion of the reaffirmation provisions of the Code. *See In re Hovestadt*, 193 B.R. 382 (Bankr.D.Mass.1996); *In re Iappini*, 192 B.R. 8 (Bankr.D.Mass.1995). Therefore, although § 524(c)(3) eliminated the requirement of court approval as to agreements containing attorney affidavits, we feel compelled to and will resume the practice of reviewing *all* such agreements, since the current procedure does not appear to be operating as intended by Congress.