**In re Joe Mack STRONG, Debtor.**

**Bankruptcy No. 98–34955.**

United States Bankruptcy Court,
E.D. Tennessee.

April 27, 1999.

Joe Mack Strong, Lenoir City, TN, Pro se Debtor.

Mary C. Walker, Knoxville, TN, Chapter 7 Trustee.

### MEMORANDUM ON DEBTOR'S MOTION TO RECONSIDER

RICHARD S. STAIR, Jr., Chief Judge.

On March 12, 1999, the court entered an Order by which it disapproved a Reaffirmation Agreement filed by the Debtor, Joe Mack Strong, acting *pro se,* and K–25 Federal Credit Union. This matter is now before the court on the Debtor's Motion to reconsider that Order filed April 7, 1999.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(*O*) (West 1993).

## I

The Debtor, acting *pro se,* filed a petition under Chapter 7 of the Bankruptcy Code on November 10, 1998. He negotiated a Reaffirmation Agreement with K–25 Federal Credit Union to reaffirm a $19,020.41 obligation secured by a 1997 Honda Accord, which he filed on December 15, 1998. The Reaffirmation Agreement states that the Debtor agrees to reaffirm the obligation in accordance with its original terms and security agreement in exchange for the opportunity to redeem the Honda on credit. Because the Debtor negotiated that agreement without an attorney, the court ordered him to appear for a hearing as required by 11 U.S.C.A. § 524(d) (West 1993 & Supp.1999). The Debtor appeared for that hearing on March 11, 1999.

At the hearing, the Debtor testified that he has continued to make payments to K–25 Federal Credit Union since the meeting of creditors. The Debtor also testified regarding his budget. He verified that his total monthly income is approximately $1,939.00, as stated in Schedule I to his Petition filed on November 10, 1998. In Schedule J, the Debtor lists total monthly expenses of $2,288.65.[1] That figure includes installment payments of $312.15 for the Honda and an obligation of $472.00 for the support of his six-year-old son. The Debtor testified at the March 11, 1999 hearing that his monthly child support obligation has increased to $525.00. The figures show the unfortunate circumstance now facing the Debtor. His budget now reflects a monthly deficit of $90.50 without the reaffirmed debt. His proposed monthly payment of $312.15 to reaffirm the Honda increases that monthly deficit to $402.65.

## II

Reaffirmation is a voluntary post-petition agreement between a debtor and a creditor. *See In re Pendlebury,* 94 B.R. 120, 122 (Bankr.E.D.Tenn.1988). Because it "envisions the retention of debt beyond discharge it is to some extent inconsistent with the fresh start provisions of Chapter 7." *Id.* at 125. Short of formally reaffirming a debt, a debtor may voluntarily continue to pay a creditor, without obligation. *See id.* at 121 n. 2. In that situation, however, a creditor retains its right to repossess the secured collateral upon termination of the automatic stay. *See id.*

Reaffirmation involves, or should involve, renegotiation of the debt, and the terms of the reaffirmation agreement may be different from the original contract terms. *See id.* at 124. Debtors have some degree of bargaining power in reaffirmation. *See id.* at 125. In the absence of reaffirmation, a creditor's claim is discharged, leaving recourse against the collateral as its sole remedy. *See id.* Reaffirmation restores a creditor's ability to seek recourse against the debtor personally as well as through repossession. *See id.* The creditor benefits by maintaining an existing security interest and an "uninterrupted stream of payments." *Id.* In addition, by reaffirming a debt, a debtor spares the creditor the expenses associated with repossession and foreclosure of collateral. *See id.* The creditor also avoids having to consider the resale value of the collateral, which could be uncertain. *See id.*

Bankruptcy Code § 524(c) authorizes reaffirmation and specifies certain requirements which must be met before a reaffirmation agreement may become valid. *See id.* at 122; 11 U.S.C.A. § 524(c) (West 1993 & Supp.1999). In this case, where the Debtor has negotiated a reaffirmation agreement without the benefit of counsel, § 524(c)(6) applies. That subdivision provides in material part that a reaffirmation agreement is enforceable only if it is approved by a court as "(i) not imposing an undue hardship on the debtor or a dependant of the debtor; and (ii) in the best

---

1. The Debtor incorrectly totaled his expenses itemized at Schedule J at $2,338.65.

interest of the debtor." 11 U.S.C.A. § 524(c)(6).

A reaffirmation agreement imposes an undue hardship on the debtor "where it would result in a significant, but otherwise avoidable, obstacle to the attainment or retention of necessaries by the debtor or the debtor's dependants." *In re Melendez*, 224 B.R. 252, 261 (Bankr. D.Mass.1998). When determining whether a reaffirmation imposes an undue hardship, there are several relevant factors which a court may consider, including the terms of the debt to be reaffirmed, whether the goods that the debtor wishes to retain are necessary, the risk of repossession if the debtor decides not to reaffirm the debt, and the replacement value of the goods compared to the amount of debt to be reaffirmed. *See id.*

The debtor's ability to meet his obligations under the reaffirmation agreement is of particular importance. *See id.* at 259. When the debtor's Schedules I and J reveal that the debtor's post-petition net income is negative, serious doubts arise concerning proposed reaffirmations. *See id.* That doubt persists where there are no improvements in the debtor's financial condition, such as increased income, which would make payments possible. *See id.*

In this case, the Debtor's Schedules I and J show that the Debtor's expenses exceeded his income when he commenced his bankruptcy case. His testimony at the March 11, 1999 hearing establishes that his expenses have increased while his income has remained constant. By the Reaffirmation Agreement, the Debtor would reaffirm the debt on his Honda according to its original terms. The court suspects that the value of the vehicle is significantly less than the amount of debt that the Debtor desires to reaffirm. The terms of the reaffirmation are the same as the original contract terms, strongly suggesting that no actual negotiation took place. Regarding the necessity of the vehicle, the Debtor claims that it is his only means of transportation and that the court imposes an undue hardship on him by disapproving his Reaffirmation Agreement. Transportation is important. There are, however, less expensive means of transportation that could be available to the Debtor. It is not necessary for the Debtor to have this 1997 Honda for the price of $19,020.41. The Reaffirmation Agreement imposes an undue hardship on the Debtor by obligating him to pay a debt which he clearly cannot pay, in order to retain a vehicle which is not necessary. To allow the Debtor to reaffirm a $19,000.00 debt on an income insufficient to support that debt would negate the fresh start awarded the Debtor through the granting of his discharge.[2] The court cannot abrogate or ignore the responsibility imposed upon it under § 524(c)(6). The best interests of the Debtor are not served by the Reaffirmation Agreement and the court cannot approve it. Accordingly, the Debtor's Motion will be denied.

---

**2.** The Debtor received his discharge on March 15, 1999.