**BankBOSTON, N.A., Appellant,**

**v.**

**Pauline NANTON, Appellee.**

**No. Civ.A. 98–12109–NMG.**

United States District Court,
D. Massachusetts.

Sept. 24, 1999.

**420**

Matthew J. McGowan, Salter McGowan Swartz & Sylvia Inc., Providence, RI, for appellant.

Donald Bertrand, Alford & Bertrand, Watertown, MA, for appellee.

Eric Kempton Bradford, Boston, MA, for J. Christopher Marshall, United States Trustee, Region One (*Amicus Curiae*).

## MEMORANDUM AND ORDER

GORTON, District Judge.

On August 11, 1998, the United States Bankruptcy Court ordered that the Reaffirmation Agreement filed on August 7, 1998, pursuant to 11 U.S.C. § 524(c), between Debtor Pauline Nanton ("Debtor" or "Nanton") and BankBoston, N.A. ("Appellant" or "BankBoston") to reaffirm Nanton's pre-petition car loan debt, was "unenforceable." In issuing that order, the Bankruptcy Court made reference, without further explanation, to Nanton's Schedules I and J of current monthly income and expenses.

Pending before this Court is an appeal by BankBoston from the order of the Bankruptcy Court. The United States Trustee has filed a brief as *amicus curiae* urging this Court to affirm the Bankruptcy Court's order.

### I. Background

On September 12, 1996, in connection with a car loan, Debtor signed a Promissory Note ("the 1996 Note") payable to BankBoston in the amount of $10,018.50 payable over five years. The Note was secured by Nanton's automobile, a 1992

Pontiac Grand Prix, pursuant to a security agreement with BankBoston.

On June 25, 1998, Debtor filed a voluntary petition for relief under the Chapter 7 of the bankruptcy laws, together with Schedules A–J. On Schedule I (Current Income of Individual Debtor), Debtor listed her monthly income to be $2,276. On Schedule J (Current Expenditures of Individual Debtor), Debtor listed monthly expenditures of $3,117.51.[1]

Furthermore, on Schedule B, Nanton claimed as property of her estate the 1992 Pontiac Grand Prix, which was, by virtue of the 1996 Note, subject to a perfected purchase money security interest held by BankBoston. Nanton stated on Schedule D that, as of the petition date, the car had a current market value of $7,500 and that BankBoston's secured claim totaled $7,395. BankBoston never disputed Nanton's valuation or the amount of its secured claim.

On August 7, 1998, Debtor executed a Reaffirmation Agreement with BankBoston, by which the Debtor agreed to reaffirm her obligation under the 1996 Note in the sum of $7,094.03, payable in monthly payments of $246.79. The Reaffirmation Agreement contains the following declaration signed by Debtor's counsel, Donald Bertrand:

> I am counsel to the Debtor herein and have advised the Debtor in all aspects of these proceedings including, without limitation, this Reaffirmation Agreement. Specifically, I have fully advised the Debtor of the legal effect and consequences of this Reaffirmation Agreement, and of any default thereunder. This Agreement represents a fully informed and voluntary agreement, that does not impose an undue hardship on the Debtor or any dependent of the Debtor.

On August 11, 1998, the Bankruptcy Court, without a hearing or the issuance of a Show Cause Order, issued an Endorsement Order regarding the Reaffirmation Agreement which states in full: "Agreement is unenforceable. *See* Schedules I & J." On August 24, 1998, BankBoston timely filed its appeal with this Court, arguing that the Bankruptcy Court, in this case, clearly abused its discretion by engaging in review of the Reaffirmation Agreement and declaring it unenforceable without affording the parties an opportunity to be heard.

On October 2, 1998, the Bankruptcy Court entered an order discharging Nanton's personal liability for her pre-petition debts.

## II. Standing

Before reaching the merits, the Court must address the question of whether BankBoston has standing to bring this appeal. The Bank's standing to appeal from the subject Order of the Bankruptcy Court is governed by the "aggrieved persons" rule. *In re Thompson,* 965 F.2d 1136, 1142 n. 9 (1st Cir.1992).

Only persons whose rights or interests are "directly and adversely affected pecuniarily" by a bankruptcy court order may appeal. *In re El San Juan Hotel,* 809 F.2d 151, 154 (1st Cir.1987). Because BankBoston's rights were detrimentally affected when the Bankruptcy Court declared the Reaffirmation Agreement unenforceable, this Court concludes that BankBoston has standing to appeal the Order voiding the Reaffirmation Agreement. *See McClellan Federal Credit Union v. Parker,* 139 F.3d 668 (9th Cir.1998) (creditor has standing to appeal order voiding reaffirmation agreement).

## III. Analysis

### A. Standard of Review

A district court reviewing the decision of a bankruptcy court applies a

---

1. Exclusive of her monthly $247 car payment to BankBoston, Nanton's expenses totaled $2,870.51.

clearly erroneous standard to findings of fact and *de novo* review to questions of law. *See In re Winthrop Old Farm Nurseries, Inc.*, 50 F.3d 72, 73 (1st Cir.1995); *See* Fed.R.Bankr.P. 8013 (providing clearly erroneous standard to findings of fact). Furthermore, it has been held that "[w]hen the finding of fact is premised on an improper legal standard, or a proper one is improperly applied, that finding loses the insulation of the clearly erroneous rule." *Wilson v. Huffman (In re Missionary Baptist Foundation of America, Inc.)*, 712 F.2d 206, 209 (5th Cir.1983). *See In re Tully*, 818 F.2d 106, 108–109 (1st Cir.1987).

■ Where the issue "poses a mixed question of law and fact, [the Court applies] the clearly erroneous standard, unless the bankruptcy court's analysis was infected by legal error ..." *Winthrop Old Farm Nurseries, Inc.*, 50 F.3d at 73 (citations omitted).

### B. 11 U.S.C. § 524(c): Reaffirmation Agreements

■ A reaffirmation agreement, authorized and regulated by 11 U.S.C. § 524, is a contract between the debtor and a creditor under which the debtor, after a bankruptcy petition has been filed, agrees to pay a dischargeable debt. *See In re Duke*, 79 F.3d 43, 44 (7th Cir.1996). An agreement to reaffirm an otherwise dischargeable debt will be binding only if it is made in compliance with section 524(c) of the Bankruptcy Code, 11 U.S.C. § 524(c).

In enacting the 1978 Bankruptcy Code, Congress included original sections 524(c) and (d) which authorized a debtor to reaffirm dischargeable debts only upon the bankruptcy court's determination, at a hearing, that the agreement imposed no undue hardship upon the debtor or her dependents and was in her best interest. By placing the court between the debtor and the creditor, Congress incorporated substantial debtor protection into the Code.

The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 353 (1984) ("1984 Act"), and the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 103 ("1994 Act") amended section 524(c) of the Bankruptcy Code by making a reaffirmation agreement effective immediately upon being filed with the bankruptcy court, so long as a debtor's attorney certified that the agreement would not impose an undue hardship. *See In re Turner*, 208 B.R. 434, 436–37 (Bankr.C.D.Ill.1997).

■ Therefore, under the current Section 524(c), a reaffirmation agreement between a creditor and a Chapter 7 debtor, represented by counsel, is enforceable only if: 1) the agreement is in writing and was made prior to discharge; 2) the agreement contains a clear and conspicuous statement notifying the debtor that a) he may rescind at any time prior to discharge or within 60 days of the filing of the agreement, whichever is later and b) he is not required to enter into the agreement; 3) the agreement is filed with the bankruptcy court; 4) the debtor has not rescinded the agreement within 60 days; and 5) debtor's counsel signs an accompanying declaration attesting that (a) the agreement represents a fully informed and voluntary agreement by the debtor, (b) the agreement does not impose undue hardship on the debtor, and (c) such counsel has fully advised debtor of the legal effect and consequences of the reaffirmation agreement and any default thereunder. *See* 11 U.S.C. § 524(c); *In re Melendez*, 224 B.R. 252, 257 (Bankr. D.Mass.1998).

### C. Discussion

This appeal, over which this Court has jurisdiction pursuant to 28 U.S.C. § 158(a), presents two issues: 1) the legal issue of whether bankruptcy courts have oversight authority over reaffirmation agreements that are accompanied by an attorney declaration,[2] and 2) assuming bankruptcy courts

---

**2.** Although numerous bankruptcy courts have

dealt with this issue, *see infra*, apparently it

retain such oversight authority, the factual issue of whether the Bankruptcy Court here was in error in finding the Reaffirmation Agreement unenforceable.

### 1. Oversight Authority of Bankruptcy Courts Of Attorney–Certified Reaffirmation Agreements

■ BankBoston argues that bankruptcy courts do not possess authority under the Bankruptcy Code to review reaffirmation agreements that are accompanied by an attorney's declaration. In support of its position, BankBoston relies on case law precedent and legislative history. Specifically, BankBoston argues that the evolution of Section 524(c) has resulted in the removal of judicial involvement and is a testament to the fact that Congress did not intend to grant bankruptcy courts oversight authority with respect to attorney-certified reaffirmation agreements.

Upon close examination of the statutory language, the legislative history and pertinent case law, discussed *infra*, this Court does not, however, agree with BankBoston on this issue.

### a. Statutory Language

Looking at the plain language of the statute and the legislative history of the 1984 and 1994 amendments, this Court notes that nothing in the statute explicitly precludes bankruptcy court oversight of reaffirmation agreements filed with an attorney declaration. Indeed, where Congress wanted to preclude bankruptcy court involvement, it has done so explicitly. *See, e.g.,* 11 U.S.C. § 341(c) ("The court may not preside at, and may not attend any meeting under this section including any final meeting of creditors."); 28 U.S.C. § 157(b)(5) (bankruptcy court may not hear personal injury of wrongful death actions).

has not yet been addressed on appeal, making it one of first impression at the district court

Furthermore, although Congress removed the mandatory discharge hearing requirement when it rewrote the statute in 1984, it also added language which mandates that all reaffirmations be filed with the bankruptcy court. *See* § 524(c)(3). As Judge Boroff noted in *In re Melendez,* "[i]f bankruptcy courts lacked authority to annul attorney-negotiated reaffirmations, why would it be necessary for such agreements to be filed with the courts?" 224 B.R. at 259. The filing requirement is further evidence of the notion that Congress intended bankruptcy courts to retain some oversight authority to void attorney-certified reaffirmation agreements.

### b. Legislative History

In addition, the legislative history of the 1984 amendments lends further support to the position that Section 524(c), as amended, was not intended to eliminate bankruptcy court review. The Senate report accompanying the bill to amend § 524 (eventually incorporated into the 1984 amendments) provided:

> Whereas the 1978 act required, as to reaffirmations of consumer debts, prior court approval for the agreement to be effective, the new section provides for immediate effectiveness of the agreement upon its filing with the court, subject to the court's review of the agreement pursuant to the exercise of its equitable jurisdiction.... The purposes of the new section are (1) to lower the cost to the parties of the reaffirmation transaction; (2) to minimize the potential burden on the bankruptcy court; (3) *to ensure that the court is properly informed of such agreements so that it may exercise equitable powers to protect the debtor from overreaching creditors.... [I]t is nevertheless intended that the court review will constitute more than a rubber stamp of the agreement.* The key consideration should be level.

ensuring that the debtor will not suffer an undue hardship by the execution of any reaffirmation agreements. In short, the debtor's fresh start should not be impaired by any such agreements.

*It is anticipated that, in the vast majority of cases, the obligations of the court may be adequately discharged by brief inquiries to counsel and the debtor.*

. . . .

In all, the new section is designed to encourage the prompt execution and implementation of good faith reaffirmation agreements by eliminating the cumbersome and unnecessary prior approval procedures which inhibited debtors and creditors from consummating mutually acceptable debt retirement arrangements.

S.Rep. No. 65, 98th Cong., 1st Sess. 59–60 (1983) (Senate Report accompanying S. 445, the Omnibus Bankruptcy Improvements Act of 1983, a forerunner of the 1984 Act) (emphasis added).

The legislative history quoted above makes clear that the 1984 Act's overriding purpose was to streamline reaffirmation procedure, and *not* to limit the bankruptcy court's responsibility, under either its equitable jurisdiction or Fed.R.Bankr.P. 9011, to determine for itself whether a particular agreement imposed an undue hardship on the debtor.[3]

### c. Caselaw

This Court notes that a number of bankruptcy courts have held (in accord with BankBoston's position) that the Bankruptcy Code does not provide for court approval of reaffirmation agreements where debtors are represented by counsel during the

course of negotiating reaffirmation agreements. *See, e.g., In re Grinnell,* 170 B.R. 495, 495–96 (Bankr.D.R.I.1994) (no review where attorney declaration is present); *In re Bauer,* No. 97–13034–SSM, 1997 WL 752652 at *5 (Bankr.E.D.Va.) (same); *In re Johnson,* 148 B.R. 532, 539 (Bankr. N.D.Ill.1992); *In re Wallace,* 102 B.R. 54, 55 (Bankr.E.D.N.C.1989) (noting that court approval need not be given for a reaffirmation agreement negotiated by debtor's attorney to make it binding, even if the court disagrees with it).

Notwithstanding those cases, this Court notes that the majority of bankruptcy courts, including those in this district, recently faced with this issue have recognized an independent obligation of bankruptcy courts to review reaffirmation agreements accompanied by an attorney declaration. *See Melendez,* 224 B.R. at 260; *In re Latanowich,* 207 B.R. 326, 336 (Bankr.D.Mass.1997); *In re Hovestadt,* 193 B.R. 382, 386 (Bankr.D.Mass.1996) (finding an independent obligation to review all reaffirmation agreements); *In re Izzo,* 197 B.R. 11, 12 n. 2 (Bankr.D.R.I. 1996); *In re Lindley,* 216 B.R. 811, 818 (Bankr.N.D.Ill.1998) ("Congress never removed the court's power to approve or disapprove a reaffirmation agreement after it is filed, and amendments to section 524 certainly did not expressly do so."); *In re James,* 120 B.R. 582, 585 (Bankr. W.D.Okla.1990) ("[C]ourt review was not intended to constitute merely a rubber stamp of the agreements, even if they were negotiated by debtors with the aid of counsel."); *In re Pendlebury,* 94 B.R. 120, 124 (Bankr.E.D.Tenn.1988) (stating that the court would not hesitate to "interject

---

**3.** Fed.R.Bankr.P. 9011 was adapted from Fed.R.Civ.P. 11 and "the substantive provisions of the two are virtually identical". *Melendez,* 224 B.R. at 257. "Their purpose is to control the practice of attorneys ... in the conduct of litigation in the federal courts." *Id.* Relevant to the issue here is Rule 9011(b), which requires an attorney filing a motion, petition or other paper to certify, *inter alia,* that "the allegations and other fac-

tual contentions have evidentiary support or ... are likely to have evidentiary support ...".

Rule 9011 clearly authorizes *sua sponte* inquiry into § 524(c)(3) attorney declarations. *See* Fed.R.Bankr.P. 9011(b) (documents covered by the rule include "a petition, pleading, written motion, or other paper"); *see also Melendez,* 224 B.R. at 258.

itself into the reaffirmation process" in appropriate circumstances).

In *Hovestadt,* the first bankruptcy decision to depart from *Grinnell,* the Bankruptcy Court observed that:

> [I]n the majority of cases in which reaffirmation agreements are filed, the debtors' Schedules I and J reveal that debtors do not have sufficient income to afford even the *de minimus* payments set forth in the reaffirmation agreements filed with the Court.

193 B.R. at 385. The *Hovestadt* Court recognized that attorney declarations required by Section 524(c)(3) were being executed by many attorneys in a perfunctory, haphazard manner. *Id.* at 386. Thus, the court determined that it would not:

> ignore the ramifications incident to a blanket assumption that reaffirmation agreements are enforceable if accompanied by an attorney declaration, when close scrutiny compels the conclusion that the elements in section 524(c) are either lacking altogether, insufficient or void as having been filed in violation of Fed.R.Bankr.P. 9011.

*Id.*

Furthermore, as the U.S. Trustee noted in its *amicus* brief, the holding in *Grinnell,* upon which BankBoston heavily relies, was subsequently undermined by the bankruptcy court that issued it. *See Izzo,* 197 B.R. at 12. In *Izzo,* the Court stated that it felt "compelled to and will resume the practice of reviewing all reaffirmation agreements" on the grounds that the [procedure as amended] did not appear to be operating as intended by Congress. 197 B.R. at 12 n. 2.

In light of the statutory language, the legislative history and the case law discussed above, this Court concludes that, under the Bankruptcy Code, as amended, bankruptcy courts possess an independent obligation to review reaffirmation agreements to ensure that the elements of Section 524(c) are satisfied.

## 2. Enforceability of Reaffirmation Agreement

■ Having concluded that bankruptcy courts retain oversight authority of attorney-certified reaffirmation agreements to ensure compliance with Section 524(c), this Court turns to the question of whether the Bankruptcy Court here erred in finding the Reaffirmation Agreement unenforceable. The Bankruptcy Court issued an endorsement order which stated without further explanation: "Agreement is unenforceable. *See* Schedules I & J." The Bankruptcy Court neither held a hearing, nor issued a Show Cause Order prior to striking down the Reaffirmation Agreement as unenforceable.

Although it is stated nowhere explicitly, one may infer that, based upon Nanton's schedules which showed her monthly expenses to exceed her monthly income by more than $800, the Bankruptcy Court determined that the Reaffirmation Agreement imposed an "undue hardship" on Nanton and was not in her "best interest" under Section 524(c). The Agreement was thus found to be unenforceable.

■ However, in light of the terse explanation offered by the Bankruptcy Court for its decision to void the Reaffirmation Agreement, it is difficult for this Court to review properly the findings of the former. While the standards of "undue hardship" and "best interest" may involve an evaluation of debtor's ability to pay, they may possibly implicate several other factors, including 1) what alternatives, other than reaffirmation, are available to a debtor who wishes to retain an interest in property, 2) whether the underlying debt is secured or unsecured, 3) if the debt is secured, the threat of repossession of and the amount of equity in the collateral, and the extent to which the collateral is a necessity to the Debtor, *see Melendez,* 224 B.R. at 259 n. 9, 260, and 4) the debtor's payment history on the collateral. Indeed, in the absence of a hearing, it is unlikely

that the Bankruptcy Court took those relevant factors into account.

In *In re Bruzzese,* 214 B.R. 444 (Bankr. E.D.N.Y.1997), the court noted that "a sampling of the debtors' schedules I and J in the 30 cases examined raised a prima facie concern whether debtors could meet their repayment obligations under these [reaffirmation] agreements." *Id.* at 450. While Nanton's Schedules I and J may have raised a *prima facie* concern about her ability to pay, the Bankruptcy Court ought not to have struck down the Reaffirmation Agreement without further inquiry at a hearing. Accordingly, this Court remands the case to the Bankruptcy Court for a hearing and further inquiry into, *inter alia,* the factors set forth above.

██ Although this Court does not address in this opinion the question of whether bankruptcy courts are *always* required, as a matter of law, to provide parties with an opportunity to be heard before striking down reaffirmation agreements, discretion being the better part of valor, it is deemed to be an appropriate and judicious exercise under all but the most obvious circumstances.

### ORDER

For the foregoing reasons, the Order of the Bankruptcy Court is VACATED, and the case is REMANDED for further proceedings consistent with this Court's opinion.

**So ordered.**