**In re Evelido VARGAS and Marial Vargas, Debtors.**

**No. 99–60330 (RTL).**

United States Bankruptcy Court, D. New Jersey.

Jan. 12, 2001.

Patricia A. Staiano, United States Trustee, by Fran B. Steele, Newark, NJ.

Thomas J. Orr, Burlington, NJ, Attorney for Chapter 7 Trustee.

Joseph Hrymack, Brick, NJ, Attorney for Debtors.

## OPINION

RAYMOND T. LYONS, Bankruptcy Judge.

This case illustrates the benefit of judicial review of reaffirmation agreements. Conscientious debtor's attorneys can be expected to competently advise their clients regarding reaffirmation agreements. Unfortunately, not all debtor's attorneys are conscientious and competent. In those instances where debtors have not had adequate advice of counsel, review by the court may prevent unwise reaffirmations which would plague debtors after discharge. Furthermore, debtor's attorneys may misperceive their role in representing their clients regarding reaffirmation agreements. It is not enough for an attorney to advise the clients of their rights and allow them to make a business decision. The attorney must exercise independent judgment. If the attorney cannot affirmatively state that the agreement does not impose an undue hardship on the debtor, the attorney must decline to sign a declaration attached to the agreement. By so doing, the attorney will assure judicial review and a hearing where the court will determine whether the agreement is in the best interest of the debtor.

Following review of three reaffirmation agreements by the same debtors, Mr. & Mrs. Vargas, the court scheduled a hearing. This led to the immediate rescission of one reaffirmation agreement and the court's disapproval of the other two. Thereafter, the court issued an order to show cause why the debtors' attorney should not disgorge the fees paid to him. Finding that the services by the attorney where not beneficial to his clients, to the contrary they could have been detrimental, the court ordered the attorney to refund to his clients all funds received on their account.

## FACTS

Mr. and Mrs. Vargas filed a joint voluntary petition under chapter 7 of the Bankruptcy Code on September 9, 1999. Mr. Vargas was not working at that time, apparently because of an injury, since his source of income was workers' compensation and Social Security benefits. Mrs. Vargas was a bookkeeper for a supermarket chain. Their combined monthly net income was $5,103.48 and their expenses totaled $5,118.71 as disclosed on Schedules I and J filed with their petition. They owned a modest home valued at $108,700.00 subject to three mortgages of $100,946.00, $28,498.29 and $10,838.56 respectively. Their personal property was minimal and all exempt.[1] They leased two automobiles, one of which they planned to surrender. Schedule F listed unsecured debt of $14,407.09 for consumer credit cards and retail charge accounts. On their Statement of Intention filed pursuant to 11

---

1. The Chapter 7 trustee abandoned the residence and filed a report of no distribution.

U.S.C. § 521(2)[2] the debtors proposed to reaffirm the first, second and third mortgages[3] on their residence and the lease of a 1998 Toyota Corolla; however, no reaffirmation agreements relating to the mortgages or the car lease[4] have been filed with the court.

Four other reaffirmation agreements were filed with the court between the Vargases and the following creditors: (1) American General Finance ($2,427.54), (2) Green Tree Retail Services Bank/Master Card ($3,710.69), (3) Household/Beneficial ($1,225.87) and (4) Sears Roebuck & Co. $224.70. Each reaffirmation agreement bore the declaration of the debtors' attorney stating that he had represented the debtors in negotiating the reaffirmation agreement, that the agreement represented a fully informed and voluntary agreement by the debtors, and that it did not impose an undue hardship on the debtors. Following a routine review of the reaffirmation agreements, the court scheduled a hearing on the first three and asked the debtors' attorney and each creditor to supply additional information, including a copy of any security agreement, proof of perfection and the fair market value for any collateral.

The debtors' attorney submitted two letters in response to the court's notice. The first letter stated that the reaffirmation agreement with Green Tree Retail Services Bank/Master Card had been executed in error. The debtors rescinded that reaffirmation agreement. The second letter enclosed a copy of American General Finance's Federal Disclosure Statement showing it had loaned $2,959.16 at an annual percentage rate of 26.49% with monthly payments of $120.00 for 36 months. The Statement granted a security interest in a 60″ RCA television. The debtors' attorney stated that, "The Debtors have been unable to locate any proof of perfection, including any filed UCC–1." The creditor valued the television at $2,500.00 replacement cost and the debtors submitted their certification valuing it at $1,800.00.[5] Also enclosed was a letter from Household/Beneficial in which they claimed a security interest in "household items". No security agreement with Household/Beneficial was produced and the attorney wrote, "Again, the Debtors are unable to locate any proof of perfection, such as the filing of a UCC–1." In his letter the debtors' attorney stated:

> The Court should note that the Debtors have informed me that the same RCA 60″ Television was used as collateral for both loans. Apparently, the Debtors did not understand that they were giving American General Finance and Household/Beneficial a security interest in the same item. Additionally, the Debtors desire to retain the RCA Television in question. It is my belief the Debtors may have inadvertently created a fraud by securing two loans with the identical collateral and thus, it would be in the Debtors best interest to reaffirm each loan, coupled with the fact that it is the Debtors' desire to retain the collateral in question.

At the hearings neither the debtors, their attorney nor Household/Beneficial appeared. Having no proof of any security interest or that a lien, if it existed, could not be avoided as a nonpossessory, nonpurchase money security interest under

---

**2.** All statutory references are to the Bankruptcy Code of 1978 as amended. 11 U.S.C. § 101 *et seq.*, unless otherwise specified.

**3.** The petition was filed prior to the Third Circuit's decision in *McDonald* holding that a junior residential mortgage may be voided in a chapter 13 case where the amount due on senior mortgages exceeds the value of the debtor's residence. *In re McDonald*, 205 F.3d

606 (3rd Cir.2000) *cert. denied*, —— U.S. ——, 121 S.Ct. 66, 148 L.Ed.2d 31 (2000).

**4.** The lessor obtained relief from the automatic stay to repossess this leased car.

**5.** On Schedule B the debtors did not separately list the 60″ television and valued all their household goods and furnishings at $1,000.00.

§ 522(f)(1)(B), and rejecting any notion that the debtors were exposed to liability for fraud, the court found that reaffirming the debt to Household/Beneficial was not in the debtors' best interest and imposed an undue hardship on the debtors. Therefore, the reaffirmation agreement with Household/Beneficial was disapproved.

■ An employee of American General Finance appeared at the hearing and conceded that American General Finance did not have a purchase money security interest.[6] The court found that reaffirming a debt of $2,427.54 at 26.49% interest with monthly payments on $120.00 for a 60" television valued by the debtors at $1,800.00 would be an undue burden on the debtors. The court also felt that the debtors could have avoided the nonpossessory, nonpurchase money lien on this television under § 522(f)(1)(B) if they amended their schedules to include the television and claim it as exempt. The reaffirmation agreement with American General Finance was disapproved.

In light all of the above facts relating to reaffirmation agreements, the court issued an order to show cause why the debtors' attorney should not be removed and required to disgorge fees. The court invited participation by the United States Trustee and the chapter 7 trustee in the Vargas case. The chapter 7 trustee, Thomas Orr, wrote that he had examined the debtors at the § 341(a) hearing regarding their statement of intention and felt that they could afford the mortgages on their home and one car lease which they intended to reaffirm, although he questioned the wisdom of reaffirming a totally undersecured junior mortgage. He also felt that the debtors' expenses were high for a family of four and referred the matter to the United States Trustee for a possible motion to dismiss under § 707(b). The chapter 7 trustee was unaware of the other four reaffirmation agreements.

The debtors' attorney responded in writing to the order to show cause. He wrote,

> I would agree with your Honor that I should have taken additional time to inquire as to whether or not Beneficial or American General in fact had valid purchase money security interests as to the property in question. As previously stated, my concern was that my clients offered the same collateral for two different loans. I candidly admit that the reaffirmation agreement between Greentree Retail Services Bank/MasterCard which was initially executed by my clients, was totally an error on my part. This was the result of my confusion with the reaffirmation agreement. As your Honor will note, one of the mortgages listed by the debtors is held by Greentree. I apparently confused Greentree Retail Services with Greentree Mortgage.

On the return date of the order to show cause the debtors' attorney did not appear. The United States Trustee recommended that the attorney be ordered to disgorge all fees paid by the debtors due to lack of value for his services. The court agreed and issued an order removing the attorney from the case and ordering a refund of fees to the debtors. The attorney complied with the order and returned $1,000.00 to the debtors.

### ISSUES

The three issues in this case involve duties underlying the requirements for filing agreements to reaffirm dischargeable debts pursuant to 11 U.S.C. § 524(c). The first issue is whether a debtor's attorney, certifying to the court that a reaffirmation agreement presents no undue hardship to the debtor, has an independent duty to reasonably inquire into the debtor's financial status. The second issue is whether a bankruptcy court has an independent right

---

**6.** Under the Uniform Commercial Code a financing statement does not need to be filed to perfect a purchase money security interest in consumer goods. N.J. Stat. Ann. 12A:9–302(1)(d).

or duty to review reaffirmation agreements to ensure a debtor's attorney has a rational basis for certifying the reaffirmation agreement. The third issue is whether a bankruptcy court may order a refund of fees paid to an attorney for failing to reasonably inquire into a debtor's financial status before certifying a reaffirmation agreement. This court concludes that: 1) if debtors' attorneys certify their clients' reaffirmation agreements, they have a duty to independently assess their clients' financial circumstances; 2) courts have the power (and perhaps a duty) to review reaffirmation agreements to ensure attorneys have fulfilled their obligation; and 3) courts may require debtors' attorneys to refund fees for failing to make reasonable inquiries, and thus, for failing to have rational bases on which to certify reaffirmation agreements.

This court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(b)(1), and the Standing Order of Reference dated July 23, 1984. The instant case is a core proceeding under 28 U.S.C. § 157(b)(2)(O).

### DISCUSSION

"[T]he widespread abuses in the day to day negotiation and enforcement of reaffirmation agreements ... continue[s] to pass largely unnoticed and unremedied" due to attorney indifference and court abdication. *In re Bruzzese*, 214 B.R. 444, 446 (Bankr. E.D.N.Y.1997). *See also* Cullhane, Marianne and White, Michael, Debt After Discharge: An Empirical Study of Reaffirmation, 73 AM. BANKR.L.J. 709 (1999). The National Bankruptcy Review Commission found that a surprising number of debtors were reaffirming unsecured debt, with the assistance of counsel, despite the fact that their incomes did not cover their living expenses.[7] In particular, many attorneys have been perfunctorily executing their reaffirmation certifications. *BankBoston, N.A. v. Nanton*, 239 B.R. 419, 425 (D.Mass.1999) (citing *In re Hovestadt*, 193 B.R. 382, 386 (Bankr.D.Mass.1996)); *In re Izzo*, 197 B.R. 11, 12 (Bankr.D.R.I.1996). Attorneys should perform their duties pursuant to 11 U.S.C. § 524(c) more carefully and courts should monitor reaffirmation agreements to see that they do.

 Debtors' attorneys have a choice to make when presented with their clients' reaffirmation agreements. They may remain strictly advocates and decline to sign the requisite declaration attached to the reaffirmation agreement. The court recognizes that attorneys' execution of these certifications may place some attorneys in a position of conflict. Cullhane, Marianne and White, Michael, Debt After Discharge: an Empirical Study of Reaffirmation, 73 AM. BANKR.L.J. 709, 710 (1999). Specifically, attorneys may not wish to undertake the reaffirmation process because they would be taking on roles akin to *in loco parentis*. If this is the case, then attorneys are not obligated to take on the duties of independently assessing their clients' financial status. If attorneys decline to sign the declarations, the corresponding reaffirmation agreements must be reviewed by the court. 11 U.S.C. § 524(c).

### Debtors' Attorneys Must Have Rational Bases To Certify Reaffirmation Agreements

 If attorneys choose to sign reaffirmation declarations, they cannot sign them in a vacuum.[8] When attorneys undertake the role of reviewers of debtors' reaffirmation agreements, their advocate

7. NATIONAL BANKRUPTCY REVIEW COMMISSION REPORT, CHAPTER 1: CONSUMER BANKRUPTCY, at 145 (Oct. 20, 1997).

8. *In re Adams*, 229 B.R. 312 (Bankr.S.D.N.Y. 1999); *In re Melendez*, 235 B.R. 173 (Bankr. D.Mass.1999) (*Melendez II*); *In re Melendez*, 224 B.R. 252 (Bankr.D.Mass.1998) (*Melendez I*); *In re Bruzzese*, 214 B.R. 444 (Bankr. E.D.N.Y.1997). *See also In re Turner*, 208 B.R. 434 (Bankr.C.D.Ill.1997), *aff'd in part, dismissed in part*, 156 F.3d 713 (7th Cir. 1998).

function fades. The reviewing attorneys must make independent determinations regarding any effects such agreements have on their clients' finances. If attorneys cannot determine such effects or they conclude that the debts, if reaffirmed, will cause undue hardships to their clients, they should not sign the declarations. Moreover, attorneys must ensure debtors who enter into reaffirmations agreements do so on a fully informed and voluntary basis.

Attorneys' duties to debtors seeking to reaffirm debts emanate from both of 11 U.S.C. § 524(c) and Fed. R. Bankr.P. 9011. Section 524(c) contains the requirements for allowing debtors to reaffirm otherwise dischargeable debts. Section 524(c) provides in part:

> c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—
>
> (1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;
>
> \* \* \*
>
> (3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that—
>
> (A) such agreement represents a fully informed and voluntary agreement by the debtor;
>
> (B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and
>
> (C) the attorney fully advised the debtor of the legal effect and consequences of—

> (i) an agreement of the kind specified in this subsection; and
>
> (ii) any default under such an agreement;

11 U.S.C. § 524(c)(3)(A) & (C).

■ From the legislative history of the statute, this court reasonably infers that Congress did not intend attorneys to rubberstamp their declarations. Prior to 1984, the Code required a court hearing before any reaffirmation agreement could be valid because debtors too often made unwise decisions to reaffirm, or were coerced by aggressive creditors to do so. In 1984, Congress switched some responsibility for protecting debtors to their attorneys. The amendment allowed the bankruptcy court to dispense with a hearing if the debtor had been represented by an attorney in negotiating the reaffirmation agreement and the attorney certified that the agreement did not impose an undue hardship on the debtor. *In re Melendez I*, 224 B.R. 252, 254–257 (Bankr.D.Mass. 1998). Congress's 1994 amendments increased the burden on debtors' attorneys by requiring them to certify that debtors had been fully informed of the consequences of the reaffirmation agreements. *In re Turner*, 208 B.R. 434 (Bankr.C.D.Ill. 1997).[9] Logically, Congress could not have intended attorneys to make baseless declarations on behalf of their clients-debtors.

■ Rule 9011 proscribes attorneys' duty to discover the facts and circumstances about their clients upon which to base their certified representations. The rule states, in relevant part:

**(b) Representations to the court**

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, in-

---

**9.** For a more detailed explanation of the legislative history of 11 U.S.C. § 524(c), *see Melen-*

*dez I*, 224 B.R. at 254–257.

formation, and belief, formed after an inquiry reasonable under the circumstances,—

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Bankr.P. 9011.

 Signed declarations attached to reaffirmations constitute representations to the court of "other paper[s]" subject to Fed. R of Bankr.P. 9011(b)(3). *In re Melendez II*, 235 B.R. 173, 189 (Bankr. D.Mass.1999). The rule requires that representations made by an attorney be supported by facts at the onset or be discoverable after the initial representation is made by either filing or signing.

### *Agreement Presents No Undue Burden: 11 U.S.C. § 524(c)(3)(B)*

 Attorneys have a duty to make reasonable financial inquiries before they can certify that reaffirmation agreements will not cause undue burden to their clients-debtors. *Melendez I*, 224 B.R. 252; *Melendez II*, 235 B.R. 173; *In re Bruzzese*, 214 B.R. 444 (Bankr.E.D.N.Y.1997). The attorney first needs to ascertain whether the debtor's expenses exceed the debtor's income. If debtors' incomes are lower than their postpetition expenses, it will be difficult to determine that the reaffirmed debt would not be an undue burden. *In re Claflin*, 249 B.R. 840, 847 (1st Cir. BAP 2000). *See also Melendez II*, 235 B.R. at 188 if expenses exceed debtors' incomes, then the undue burden hurdle is likely not overcome (citing *In re Bruzzese*, 214 B.R. 444, 450 (Bankr.E.D.N.Y.1997)). The second element is whether the reaffirmed debt is secured by a necessary item. If debtors' expenses are higher than their incomes and the reaffirmed debts are for

unnecessary items, then the agreements will unduly burden debtors. *Melendez II*, 235 B.R. at 197; *In re Strong*, 232 B.R. 921, 924 (Bankr.E.D.Tenn.1999); *Melendez I*, 224 B.R. at 261.

In the instant case, the attorney failed to conduct an undue burden analysis. An examination of debtor's finances and of the agreements' terms shows that debtors could not have afforded to repay these debts. Had the reaffirmations agreements stood, debtors would have reaffirmed a sizeable portion of their total debts, thereby defeating the purpose of bankruptcy protection. The 60″ television hardly constitutes a necessary item.

### *Debtor is Fully Advised of Agreement's Consequences: 11 U.S.C. § 524(c)(3)(C); The Agreement Is a Fully Informed and Voluntary Agreement of Debtor: § 524(c)(3)(A)*

 Section 524 requires attorneys to inform their debtors-clients of the legal effects and consequences of reaffirmation agreements, including alternatives to reaffirming. *Bruzzese*, 214 B.R. 444. *See also, In re Hovestadt*, 193 B.R. 382, 387 (Bankr.D.Mass.1996) (striking the attorney declaration because attorney mis-advised debtor of her rights and options attendant to the agreement). If debts sought to be reaffirmed are secured, attorneys have the duty to independently verify the creditors' current security interests. Debtors need to understand that they will not have the discharge protection for reaffirmed debts and that they will be personally liable for these reaffirmed debts should they default.[10]

 Attorneys need to apprise their debtors-clients of the options available for their dischargeable debts. *Melendez II*, 235 B.R. at 200. First, debtors need to be aware of their creditors' intentions should debtors choose to not reaffirm, including

---

**10.** Indeed, reaffirmation agreements are not favored in the law because they leave debtors personally liable for debts that would otherwise be discharged. *Adams*, 229 B.R. at 316

(quoting *In re Kamps*, 217 B.R. 836, 841 (Bankr.C.D.Cal.1998); *In re Getzoff*, 180 B.R. 572, 574 (9th Cir. BAP 1995)).

the possibility of repossession of the property at issue. *Strong*, 232 B.R. at 924. Second, debtors with debts concerning nonpurchase-money security interests on household goods may opt to avoid them pursuant to 11 U.S.C. § 522(f)(1)(B) and not reaffirm. Third, debtors can redeem, at fair market value, household/personal items from liens securing dischargeable consumer debts pursuant to 11 U.S.C. § 722. *Melendez II*, 235 B.R. at 200 (citing *In re Kamps*, 217 B.R. at 854). Fourth, individual debtors can choose to reorganize under chapter 13 so that they can use payment plans to retain collateral.

The record does not reflect that the Vargas' were fully informed of these consequences. As the attorney admitted, he did not reasonably inquire whether the creditors actually had valid purchase money security interests in debtors' property. Had the attorney inquired, he would have discovered that none of the loans was secured by purchase money security agreements. The clients were unaware of their option to avoid the liens under § 522(f)(1)(B). Thus, debtors were not fully informed and could not have entered into the agreement voluntarily.

## Courts Should Review Reaffirmation Agreements and Hold Hearings

■ Judicial review of reaffirmation agreements is an excellent preventive measure against unwise reaffirmation of debts that may impair debtors' fresh start. *In re Izzo*, 197 B.R. 11 (Bankr.D.R.I.1996); *In re Getzoff*, 180 B.R. 572, 574 (9th Cir. BAP 1995). This case is an egregious example of unwise, uninformed, and burdensome reaffirmation agreements. It is by no means uncommon. Had the court not reviewed these agreements, the debtors would have been personally liable for otherwise dischargeable debts. Although this court envisions judicial review as a benefit to all parties to reaffirmation agreements, many courts have held that independent review of these agreements is a court duty.[11]

■ Consistent with the protective purpose of 11 U.S.C. § 524,[12] judges have the power to independently review reaffirmation agreements to ascertain that reasonable bases exist for the accompanying declarations. *Kamps*, 217 B.R. at 846; *Melendez I*, 224 B.R. 252, 278. If the court is unable to determine advisability of the agreement from a review, then it should hold a hearing. Finding no reasonable basis for reaffirming is grounds to disapprove a reaffirmation agreement. *Hovestadt*, 193 B.R. at 387.

## Disgorgement of Fees Paid to Debtors' Attorney Pursuant to 11 U.S.C. § 329

■ Pursuant to § 329[13], courts have ordered attorneys to disgorge their fees for services they rendered to their debtors-clients because such services were

11. *In re Collins*, 243 B.R. 217, 220 (Bankr. D.Conn.2000) (citing *Melendez II*, 235 B.R. 173 (Bankr.D.Mass.1999)); *BankBoston, N.A. v. Nanton*, 239 B.R. 419 (D.Mass.1999); *In re Bruzzese*, 214 B.R. at 451 ("it may be an abdication of duty for a bankruptcy judge to accept all declarations at face value."); *In re Turner*, 208 B.R. 434, 437 (Bankr.C.D.Ill. 1997); *In re Hovestadt*, 193 B.R. at 386. *But see In re Bauer*, 1997 WL 752652 at *5 (Bankr.E.D.Va.1997).

12. Congress' requirements for reaffirmation of agreements are designed to protect the honest but unfortunate debtor's fresh start. *Melendez I*, 224 B.R. at 254; *Hovestadt*, 193 B.R. at 386; *In re Kamps*, 217 B.R. 836, 841 (Bankr.C.D.Cal.1998) (citing, *In re Martin*, 761 F.2d 1163, 1168 (6th Cir.1985)); *In re Fernandez–Lopez*, 37 B.R. 664, 667 (9th Cir. BAP 1984).

13. Section 329 of the Bankruptcy Code provides:

b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
(1) the estate, if the property transferred—
(A) would have been property of the estate; or
(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
(2) the entity that made such payment.

of no value. *In re Bruzzese,* 214 B.R. 444, 450, 451 (Bankr.E.D.N.Y.1997); *In re Grimes,* 115 B.R. 639, 643, 648 (Bankr. D.S.D.1990). The *Bruzzese* court held that the attorney breached his fiduciary duty to his client by disregarding the client's economic circumstances and by misrepresenting to the court that the attorney fully informed debtor of the legal effects and circumstances as required by statute. *Bruzzese,* 214 B.R. at 449. *See also Hovestadt,* 193 B.R. at 382 (Bankr.D.Mass. 1996) (same). Accordingly, the *Bruzzese* court also held that the attorney's services were of no value and ordered a decrease of the fees billed. *Id.*[14]

 Like *Bruzzese,* the attorney in the instant case disregarded his duty to his client and the court by filing unwarranted and unsubstantiated reaffirmation agreements. The conduct of the attorney in the case at bar is, arguably, more egregious than that in *Bruzzese.* Here, the attorney certified reaffirmation agreements for debts with aggregate dollar amounts that were more than fifty percent of the total amounts on Schedule F. In addition, the Vargas family could not have afforded to pay under the terms of the reaffirmed debts. They would have been in default of the loans as a result of nonpayments resulting in possible loss of the collateral and personal liability to them. These agreements, unchecked by the court, could have left the Vargas' in a dire situation.

Debtor's attorneys have to decide whether they will accept the responsibility imposed by Congress under Section 524(c)(3) or remain solely advocates for their clients. Attorneys who choose to accept that responsibility have a duty to independently assess their client's financial status before declaring that a reaffirma-

tion agreement does not impose an undue hardship on the debtors. Furthermore, debtor's attorneys must determine that their clients have been fully informed regarding the agreement, that they enter it voluntarily, and must fully advise the debtor of the legal effect and consequences of the reaffirmation agreement. Attorneys who have not made such assessment and determination should not sign a declaration attached to a reaffirmation agreement.

Experience in this district and others indicates that debtor's attorneys are not always as diligent as they should be when it comes to reaffirmation agreements. Bankruptcy courts can prevent a number of debtors from unwisely or unwittingly reaffirming debts by monitoring all reaffirmation agreements, including those with attorney declarations attached.

## *CONCLUSION*

In this case, debtors' attorney failed to examine the Vargas' financial status and inform them of the effect of the reaffirmation agreements pursuant to 11 U.S.C. § 524(c) and Fed. R. Bankr.P. 9011. The debtor's attorney must disgorge his fees based on his failure to render any valuable service to his clients pursuant to 11 U.S.C. § 329(b).

---

**14.** This court did not impose additional sanctions beyond disgorgement of fees, although bankruptcy courts have the authority to impose monetary sanctions for egregious behavior of attorneys. *Melendez I,* 224 B.R. at 258; *Bruzzese,* 214 B.R. 444. Rule 9011(b) violations and corresponding sanctions apply to noncompliance with the duties underlying 11

U.S.C. § 524(c) requirements. *Melendez I,* 224 B.R. at 258. *See also In re Izzo,* 197 B.R. 11, 12 (Bankr.D.R.I.1996) (court ordered debtor and his counsel to show cause in writing why the court should not sanction them for filing with the court incorrect schedules and reaffirmation declarations).